**Michael SIMS, Appellant,**

v.

**The STATE of Texas.**

**No. 1313–02.**

Court of Criminal Appeals of Texas.

Oct. 8, 2003.

Michael B. Roberts, Waco, for Appellant.

Jeffrey L. Van Horn, First Asst. St. Atty., Matthew Paul, State's Attorney, Austin, for State.

## OPINION

KELLER, P.J., delivered the opinion of the Court in which MEYERS, KEASLER, HERVEY, HOLCOMB, and COCHRAN, J.J., joined.

The question presented by this case is whether the transfer of drugs was "actual" or "constructive." We hold that some-times both types of transfers can occur in the same transaction and that this is one of those times.

## I. BACKGROUND

Mike Turner, an undercover law enforcement agent, met appellant at an outdoor site to buy crack cocaine. When Turner asked "where it was at," appellant pointed to a foil-wrapped package lying in the road near a tree and said "it's right there in that piece of foil." Turner retrieved the package and haggled with appellant over the price. Appellant was paid $480 for the cocaine.

Appellant was subsequently indicted for, and convicted of, delivery of cocaine by "constructive transfer." On appeal, he contended that the evidence was legally insufficient to support his conviction because the evidence showed an actual transfer rather than a constructive transfer. Relying upon Queen v. State,[1] the Court of Appeals held that appellant had indeed effected a constructive transfer.[2] In so holding, the Court of Appeals declined to follow Houston[3] and Texarkana[4] decisions that held that the relevant portion of Queen had been nullified by later cases.[5] Consequently, the Court of Appeals found the evidence to be legally sufficient and affirmed the conviction.[6]

## II. ANALYSIS

### A. The conflict

Queen held that a constructive transfer can occur in at least two ways: (1) through

---

1. 662 S.W.2d 338 (Tex.Crim.App.1983).

2. Sims v. State, 82 S.W.3d 730, 732–734 (Tex. App.-Waco 2002).

3. Stolz v. State, 962 S.W.2d 81 (Tex.App.-Houston [1st Dist.] 1997).

4. Warren v. State, 15 S.W.3d 168 (Tex.App.-Texarkana 2000).

5. Sims, 82 S.W.3d at 733–734.

6. Id. at 734. Appellant had a second point of error that the Court of Appeals also rejected. Id. at 734–735. That second point of error is not before us.

an intermediary ("by entrusting [the contraband] to an associate or the postal service") and (2) by "plac[ing] the contraband in a particular location and then advis[ing] the recipient of this location so that the recipient can retrieve the" contraband in question.[7] The second method identified by *Queen* is at issue in the present case. Clearly, the facts of this case show a transfer by that method. The question we confront is whether *Queen* accurately describes this method as one of constructive transfer.

Two courts of appeals have held that *Queen's* characterization is not accurate. In *Stolz*, the defendant placed marijuana on a fence post twenty feet from the buyer while the buyer watched.[8] Two or three minutes later, the buyer retrieved the marijuana.[9] On appeal, the defendant argued that the evidence was insufficient to show that an actual transfer occurred because the transfer was in fact a constructive transfer.[10] The Houston Court of Appeals affirmed, holding that the transfer was an actual transfer because "no other person or means" was used to transfer the marijuana between the two persons involved.[11] The court then remarked that its holding contradicted "dictum" found in *Queen*.[12] However, the Houston court found that this "dictum" was "neutralized" by subsequent "dictum" in *Daniels v. State*, which stated: "[A constructive

transfer] only requires that when the State alleges constructive transfer to an alleged ultimate recipient, that the accused must have contemplated that his initial transfer would not be the final transaction in the chain of distribution."[13] The Houston court found that *Daniels* required the defendant to contemplate subsequent transfers beyond the initial transfer (i.e. subsequent transferees) for a transaction to qualify as a constructive transfer, and because *Queen's* second method does not describe the contemplation of subsequent transfers, *Queen's* second method does not describe a constructive transfer.[14]

In *Warren*, an undercover law enforcement agent met the defendant and asked, "Do you have something for me?"[15] The defendant replied, "Yes, it's in the bathroom on top of the toilet."[16] The undercover agent then retrieved cocaine placed in the bathroom.[17] Relying upon *Queen*, the defendant alleged on appeal that the evidence was insufficient to show an actual delivery because it showed a constructive delivery.[18] The Texarkana court held that *Queen's* definition of constructive delivery was superseded by *Nevarez v. State*, where this Court indicated that an *actual* delivery was accomplished by "nothing more than making a thing available to another, placing it within his reach, notwithstanding there is no actual handing of the thing from one person to another."[19]

---

7. 662 S.W.2d at 340. The Court remarked that there may be "other possible forms of constructive transfer." *Id.*

8. 962 S.W.2d at 82.

9. *Id.*

10. *Id.*

11. *Id.*

12. *Id.* at 82–83.

13. *Id.* at 83 (quoting *Daniels v. State*, 754 S.W.2d 214, 221 (Tex.Crim.App.1988) (bracketed material in *Stolz* )).

14. *Id.*

15. 15 S.W.3d at 169.

16. *Id.*

17. *Id.*

18. *Id.* at 169–170.

19. *Id.* at 171 (quoting *Nevarez v. State*, 767 S.W.2d 766, 768 (Tex.Crim.App.1989)).

Holding that an actual transfer did not require that the seller manually place the contraband in the hands of the buyer, the Texarkana court affirmed the conviction.[20]

### B. Resolution

The conflict posed by the courts of appeals is more apparent than real. The present case involves both a constructive transfer and an actual transfer. The constructive transfer occurred when appellant informed the undercover officer of the cocaine's location. The actual transfer occurred when the undercover officer actually retrieved the contraband. To explain how this can be so, we first turn to our decision in *Rasmussen v. State*.[21]

#### 1. *The roots of Queen*

In *Rasmussen*, we addressed the meaning of the term "constructive transfer," in the context of a delivery offense, for the first time.[22] We concluded that the term was derived from the Uniform Controlled Substances Act of 1970.[23] As a consequence, we looked to other jurisdictions for guidance.[24]

We discussed the holdings of three jurisdictions, each involving a distinct set of circumstances held to be a constructive transfer.[25] The first was a West Virginia case involving a transfer effectuated by another person (i.e. an intermediary) under the direction of the defendant.[26] In that case, *State v. Ellis*, the West Virginia Supreme Court of Appeals interpreted "constructive transfer" to mean "the transfer of a controlled substance either belonging to an individual or under his control by some other person or agency at the instance or direction of the individual accused of such a constructive transfer."[27] The second was a Nebraska case in which the defendant instructed an undercover officer to retrieve the contraband from a wastebasket.[28] Holding that the transaction in question was a "constructive transfer," the Supreme Court of Nebraska remarked: "it is not necessary for the State to show actual physical transfer of a controlled substance from the defendant. The statutory definition of delivery clearly encompasses more than actual, direct transfers. It includes constructive and indirect transfers as well."[29] The third was a New Mexico case where a controlled substance was mailed to the recipient.[30] The New Mexico Court of Appeals held: "Placing the controlled substance in the mail had the effect of turning the controlled substance over to an agent for delivery. This amounts to a constructive transfer."[31] Of interest to the issue at hand is the New Mexico court's discussion immediately preceding the holding quoted in *Rasmussen*:

**20.** *Id.* at 172.

**21.** 608 S.W.2d 205 (Tex.Crim.App.1980)(opinion on State's motion for rehearing).

**22.** *Id.* at 209

**23.** *Id.; see also Uniform Controlled Substances Act (1970)*, U.L.A., Vol. 9, Pt IV, § 101(f) (master ed.1997).

**24.** *Id.* at 209.

**25.** *Id.* at 209–210.

**26.** *Id.* at 209 (citing *State v. Ellis*, 161 W.Va. 40, 239 S.E.2d 670 (1977)).

**27.** *Id.* (quoting *Ellis*, 239 S.E.2d at 673).

**28.** *Id.* at 209–210, 239 S.E.2d 670 (discussing *State v. Guyott*, 195 Neb. 593, 239 N.W.2d 781 (1976)).

**29.** *Id.* at 210, 239 N.W.2d 781 (quoting *Guyott*, 239 N.W.2d at 782).

**30.** *Id.* (citing *State v. McHorse*, 85 N.M. 753, 517 P.2d 75 (App.1973)).

**31.** *Id.* (quoting *McHorse*, 517 P.2d at 78).

"The delivery (of a check) to the post office (for final delivery to the addressee) is a constructive and technical delivery." The deposit of an insurance policy in the mail, addressed to the insured, is a constructive delivery to the insured. Compare the effect of mailing or shipping in unilateral contracts. The statement of facts is to the effect that defendant mailed the controlled substance to the juvenile. If this is true, defendant selected the mails as his delivery agent. If properly mailed, there was a presumption of delivery.[32]

At least some of this discussion indicates that a constructive delivery occurs when an item is deposited in the mail, even though the item has not yet been received by the intended transferee.

We pointed to a common element in all of these cases: "prior to delivery, the substance involved was directly or indirectly under the defendant's control."[33] In response to the State's contention that there was a constructive transfer, we held that the State failed to show that the defendant exercised direct or indirect control over the contraband—a necessary precondition for showing an actual or constructive transfer (absent the law of parties).[34]

The *Rasmussen* opinion did not say it was adopting the entire holdings of these out-of-state jurisdictions concerning the meaning of "constructive transfer." Even if it had, none of those cases can be interpreted to clearly hold that an intermediary is essential to establishing a constructive transfer. *Ellis* comes closest, but the opinion refers to transfer via another "person or *agency*"—the reference to agency raising the possibility of circumstances broader than the action of an intermediary. By contrast, the Nebraska case involved circumstances materially identical to the case at bar; it clearly held that an intermediary is *not* necessary to effectuate a constructive transfer. And the New Mexico case also lends support to finding a constructive transfer in the case at bar by indicating that a constructive transfer may be complete even though the recipient has not yet received the contraband. We will discuss later the significance of an incomplete actual transfer being a completed constructive transfer.

### 2. *Queen's holding*

Now we turn to *Queen*. In that case, the defendant moved to set aside the indictment for failing to specify which of the three types of delivery (actual transfer, constructive transfer, offer to sell) the State would rely upon for conviction.[35] The indictment specified that the defendant effected delivery by "transferring the said marijuana into a motor vehicle within the care and control and custody of the said Ben Neel and by transferring the said marijuana to the actual custody of the said Ben Neel."[36] The Court held that the indictment alleged both an actual and a constructive transfer—the constructive transfer being the delivery of marijuana to the recipient's motor vehicle.[37] The Court further found that the constructive nature of the transfer was confirmed by the evidence: the defendant drove Neel's automobile to the location of the marijuana, loaded the marijuana onto the automobile, drove the automobile back to its original

---

**32.** *McHorse*, 517 P.2d at 78 (citations omitted).

**33.** *Rasmussen*, 608 S.W.2d at 210.

**34.** *Id.*

**35.** 662 S.W.2d at 339–340.

**36.** *Id.* at 340.

**37.** *Id.* at 341.

location, and returned to Neel's house and handed him the keys.[38]

As we have already stated, *Queen* noted the existence of two types of constructive transfers: (1) a transfer through an intermediary, and (2) a transfer effected by telling the recipient where the contraband is located.[39] In citing these two methods, *Queen* relied upon *Rasmussen.* A close examination of *Queen's* articulation of these methods reveals that neither requires a completed actual transfer. In the first method, a constructive transfer to the intended recipient occurs "by entrusting the narcotics to an associate or the postal service for the delivery of the recipient." [40] The act of "entrusting" appears to be the act that completes the constructive transfer. The contraband is entrusted "for" delivery to the recipient, but nothing is said of actual delivery to the recipient being completed. In the second method, a constructive transfer occurs when the actor "place[s] the contraband in a particular location and then advise[s] the recipient of this location so that the recipient can retrieve the narcotics." [41] The constructive transfer appears to occur upon the act of advising the recipient, with the purpose of the advice being to enable the recipient to retrieve the contraband. Again, the language of the opinion does not appear to require a completed actual transfer to the

recipient. And in fact, the opinion's application of law to the facts shows a constructive transfer where no actual transfer had yet taken place. According to the Court in *Queen,* the constructive transfer occurred in that case when the contraband was placed in the recipient's motor vehicle, or at the latest, when the defendant returned the recipient's car keys. The recipient did not yet have physical possession of the contraband.[42]

The courts of appeals' analyses of *Queen* in *Stolz* and *Warren,* and perhaps in the present case, assume that a completed actual transfer must occur for there to be a constructive transfer. *Queen* made no such assumption, and as will be discussed below, such an assumption would be incorrect. Further, we disagree with the Houston court's conclusion in *Stolz* that *Queen's* pronouncement concerning the second method of constructive delivery was *dictum.* *Queen* held that the indictment was sufficiently specific because it alleged an actual transfer and a constructive transfer. The only constructive transfer involved in that case was the transfer of contraband from the defendant to the recipient's automobile—a transfer that did not involve an intermediary.

### 3. Did later cases nullify Queen?

The next important case to consider is *Daniels.* *Daniels* discussed *Queen* but did

38. *Id.*

39. *Id.* at 340.

40. *Id.*

41. *Id.*

42. Of course, physical possession by the recipient is not necessarily required to establish an actual transfer; in *Heberling v. State,* we held that it is enough to place the contraband in the hands of the intended recipient's agents. 834 S.W.2d 350, 354 (Tex.Crim.App. 1992). Whether that holding extends to placing the contraband inside the recipient's

property, and if so, when such placement may transfer possession (i.e. whether possession changes while the defendant still maintains control over the recipient's property) are issues that we need not decide here. The present case does not involve those complicating facts, and *Queen* was decided nearly a decade before *Heberling,* when it was not clear whether an actual transfer could be accomplished other than by physical delivery of the contraband to the recipient. *See id.* ("we *now* hold that an actual transfer or delivery, as commonly understood, contemplates" delivery to the transferee's agents).

not criticize any aspect of the opinion.[43] However, the Court did examine in further depth the meaning of "constructive transfer." Initially, the Court observed that the term "constructive transfer" is "not defined by the Legislature for the purpose of the Controlled Substances Act, the Penal Code, or elsewhere."[44] The Court then held that the term should be given its plain or common meaning.[45] To ascertain the term's common meaning, the Court consulted one dictionary and two law dictionaries.

Ballentine's Law Dictionary defined delivery generally, as "a handing over; the surrender of possession to another" and observed that: "For some purposes, a delivery is accomplished by nothing more than making a thing available to another, placing it within his reach, notwithstanding there is no actual handing of the thing from one person to another."[46] No distinction between actual and constructive transfer appears in this definition. Of more interest, however, are the remaining two dictionaries' definitions provided, which specifically addressed constructive transfers.

Black's Law Dictionary defined "delivery" as: "The act by which the res or substance thereof is placed within the actual or constructive possession or control of another."[47] Black's further distinguished between actual and constructive delivery—the main difference centering on whether real possession has been conferred on the transferee:

Actual delivery consists in giving real possession to the vendee or his servants or special agents who are identified with him in law and represent him. It is a formal immediate tradition of the property to the vendee.

Constructive delivery is a general term, comprehending all those acts which, *although not truly conferring a real possession of the thing sold on the vendee,* have been held, by construction of law, equivalent to acts of real delivery.[48]

The Court also quoted a definition of "constructive delivery" found in Webster's Third New International Dictionary: "a delivery not accompanied by an actual transfer of possession of the property delivered yet recognized as having been intended by the parties and as sufficient in law."[49]

The Court then discussed the *Rasmussen* opinion.[50] In that discussion, the Court observed that *Rasmussen* reviewed three out-of-state cases and gleaned a common element from those cases: "that prior to delivery the substance involved was directly or indirectly under the defendant's control."[51] One of the definitions discussed in *Rasmussen,* and then in *Daniels,* was the definition found in *Ellis,* which indicated that a constructive transfer was a transfer effectuated by an intermediary of some sort.[52] *Daniels* emphasized that *Rasmussen* did not adopt the *Ellis* definition: "The *Rasmussen* Court

43. *See Daniels,* 754 S.W.2d at 218–219.

44. *Id.* at 219.

45. *Id.* at 219–220.

46. *Id.* at 220.

47. *Id.* at 219 (quoting Black's Law Dictionary, 5th ed., pp. 385, 386 (1979)).

48. *Id.* at 219–220 (quoting Black's)(emphasis added).

49. *Id.* at 220 (quoting Webster's Third New Int'l Dic. (Unabridged Ed.1961)).

50. *Id.* at 220–221.

51. *Id.*

52. *Daniels,* 754 S.W.2d at 220.

did not, repeat, did not adopt the definition of 'constructive transfer' as set out in *Ellis*, although later cases seem to be confused on this point. All it did was to glean a common element from the out-of-state cases mentioned in the opinion." [53]

In fact, the definitions given in *Daniels* all point to constructive transfer as a type of transfer that does *not* vest actual possession in the transferee. Rather, constructive transfer involves a legal substitute for actual possession. This approach is the one taken in civil cases, and sometimes arises in the use of deeds to transfer property. The grantor of the property places the deed in the hands of a third party for the benefit of a grantee or holds the property while manifesting an intent that the property belong to the grantee. This approach was articulated by the United States Supreme Court over a century ago: "Constructive delivery may and does exist where the grantor, in the exercise of his proper authority, places the deed in the hands of a stranger for the use of the grantee, *or even in some cases where he retains possession, at the same time sufficiently manifesting his intention to treat it as having passed the title to the grantee.*" [54]

The Texas Supreme Court has articulated a common example of constructive delivery by transfer to a third party: recording a deed at an official place designated for property filings (e.g. the county clerk):

It is, of course, true that a deed of trust to be effective must be delivered, but we are of the opinion that a constructive delivery was proven by the undisputed evidence. "If the mortgage is made in pursuance of a previous agreement of the parties to place a mortgage on a specific property, which the mortgage[e] has agreed to accept, then the act of the mortgagor in filing it for record in the proper office is a sufficient delivery of it."

\* \* \*

See also the following authorities which hold that the filing for record by the grantor at the request or with the consent of the grantee or mortgagee amounts to a constructive delivery. [55]

Under this rule, the beneficiary receives title even though he did not obtain possession of the deed. Conveying the deed to the recording agency with the intent that the beneficiary receive title was sufficient by itself to effectuate constructive delivery.

In *Brown v. Brown*, the Texas Supreme Court addressed whether a husband had delivered a real estate deed to his wife. [56] The Court cited a case in which constructive delivery was found when a member of a law firm conveyed title to land to the law firm but retained possession of the deed. [57] Because the grantor was a member of the firm, he had authority to possess the deed on the firm's behalf. [58] Similarly, the husband had authority to possess the deed on his wife's behalf, and if he signed the deed before attesting witnesses, then delivery was complete even though the husband retained possession. [59] The Texas Supreme Court remarked that "the question is one of intention, to be determined from the facts and circumstances preceding, at-

53. *Id.* at 221.

54. *United States v. Schurz,* 102 U.S. 378, 26 L.Ed. 167 (1880).

55. *West v. First Baptist Church of Taft,* 123 Tex. 388, 71 S.W.2d 1090, 1099 (1934).

56. 61 Tex. 56 (1884).

57. *Id.* at 59.

58. *Id.*

59. *Id.* at 59–60.

tending and following the transaction." [60] Likewise, in civil cases Texas courts of appeals have held that a constructive delivery occurs when the transferor sufficiently manifests his intent that the property belong to the transferee even though the transferee does not obtain possession [61] and even if a third party is not involved in the transaction.[62]

There is in fact no specialized "criminal" meaning for the term "constructive transfer." The dictionary definitions given in *Daniels* are general ones, geared at least as much (and probably more) toward civil cases as toward criminal cases. We have noted that our construction of the parallel term "actual transfer" is "consistent with its general understanding in the civil context." [63] In a concurring opinion in *Conaway v. State,* Judge Clinton cited a civil case—*Fox v. Young*—to illustrate the concept of constructive delivery.[64] In that civil case, a person constructively delivered a doughnut machine to a creditor—without moving the machine from the café in which it was situated—by writing a letter stating that the debtor did "herewith tender and do deliver to you possession" of the machine.[65] The definition Judge Clinton was illustrating was the same Black's Law definition of constructive delivery later quoted in *Daniels.*[66] As in the present case, *Fox* involved a transferor who gave an instruction to the transferee designed to enable the transferee to retrieve the property on its own, without the assistance of a third party.

In two cases that pre-date this state's adoption of the Uniform Controlled Substances Act, this Court has used the term "constructive delivery" in a manner conforming to the usage in *Fox* and other civil cases. In *Madison v. State,* the defendant was convicted of stealing hogs.[67] Mistakenly believing that the hogs belonged to the defendant, Grooms informed the defendant that the hogs had ranged into Grooms's field.[68] Although the hogs actually belonged to a third party, the defendant called the hogs up and purported to sell the hogs to Grooms.[69] The next day, Grooms put the hogs into his pen.[70] We held that the defendant's calling up and selling the hogs constituted a constructive delivery to Grooms, even though Grooms did not yet have possession:

> In this case, though the hogs were in their accustomed range, yet they were

---

**60.** *Id.* at 60.

**61.** *Bullock v. Foster Cathead Co.,* 631 S.W.2d 208, 210 (Tex.App.-Corpus Christi 1982, no writ)(assignment of pledged property delivered to creditor is a constructive delivery of the pledged property); *Emco Inc. v. Healy,* 602 S.W.2d 309, 313 (Tex.Civ.App.-Texarkana 1980, no writ)(stock issued by corporation on behalf of shareholder that is delivered to bank lienholder constitutes constructive delivery to shareholder); *Fletcher L. Yarbrough & Co. v. Texas & N.O. Ry. Co.,* 226 S.W.2d 257, 259 (Tex.Civ.App.-Dallas 1949, writ ref'd), *cert. denied,* 340 U.S. 820, 71 S.Ct. 52, 95 L.Ed. 603 (1950)(delivery of bill of lading constitutes constructive delivery of the goods it represents).

**62.** *Bullock,* 631 S.W.2d at 210; *Fletcher,* 226 S.W.2d at 259.

**63.** *Heberling,* 834 S.W.2d at 354 n. 5.

**64.** *Conaway v. State,* 738 S.W.2d 692, 697–698 (Tex.Crim.App.1987)(Clinton J. concurring)(citing *Fox v. Young,* 91 S.W.2d 857 (Tex. Civ.App.-El Paso 1936, no writ)).

**65.** *Conaway,* 738 S.W.2d at 698 n. 4.

**66.** *Id.* at 697.

**67.** 16 Tex. Ct.App. 435 (1884).

**68.** *Id.* at 440.

**69.** *Id.*

**70.** *Id.*

gentle and were called up by defendant or Grooms, and were right up at them, in their presence, and could have been immediately driven off by either or both when defendant made his sale and constructive delivery of them to Grooms. Under these circumstances, had not the hogs been "taken," in legal contemplation, by defendant before the sale? He called them up; this was exercising control over them certainly, and after they came up, and whilst they were thus in his control, if he, knowing them not to be his property, sold and constructively delivered them to Grooms, who afterwards took them into actual possession under the purchase, it would in our opinion, bring the case fully within the rule quoted above from Russell, viz: that "if the thief fraudulently procure a person innocent of any felonious intent to take the goods for him, his offense will be the same as if he had taken the goods himself." The appropriation, so far as defendant is concerned, was obvious, and the taking did not rest solely upon the subsequent exercise of ownership and possession by Grooms.[71]

In *Rountree v. State,* the defendant and his nephew conspired to steal a calf from a third party.[72] They agreed that the nephew would take the calf and tie it at a certain location, where appellant would arrive and take possession.[73] This plan was carried out.[74] We found that a constructive delivery of the calf to appellant occurred at the point the animal was tied:

> It appears to us that when Eugene Rountree tied the animal at a place agreed upon between him and appellant

for the convenience of appellant to load it into his truck, that same was a constructive delivery of the animal to appellant at the point where it was tied.[75]

Both *Madison* and *Rountree* involved a constructive delivery that was not facilitated by an intermediary and was complete before any actual delivery had occurred. In *Madison,* the constructive delivery was complete when the defendant told the transferee that the hogs were now his. In *Rountree,* the constructive delivery was complete when the calf was placed in a pre-arranged location.

Given the general definitions quoted in *Daniels* and the historical background of the term "constructive delivery," we must disagree with the *Stolz* court's contention that *Daniels* articulated a rule at odds with the second category of constructive transfer found in *Queen.* The relied upon passage in *Daniels,* in its larger context, says:

> In *Gonzalez v. State,* 588 S.W.2d 574, 577 (Tex.Cr.App.1979), this Court held that a constructive transfer requires the transferor at least be aware of the existence of the ultimate transferee before delivery. This does not mean that the transferor need know the identity of or be acquainted with the ultimate recipient. It only requires that *when the State alleges constructive transfer to an alleged ultimate recipient* that the accused must have contemplated that his initial transfer would not be the final transaction in the chain of distribution.[76]

*Gonzalez v. State,* involved an indictment that alleged a transfer to a third party (i.e.

---

71. *Id.* at 442–443.

72. 140 Tex.Crim. 188, 143 S.W.2d 942 (App. 1940).

73. *Id.* at 942.

74. *Id.*

75. *Id.* at 942–943.

76. *Daniels,* 754 S.W.2d at 221 (emphasis added, citation omitted).

not the immediate transferee), but this Court found that there was no evidence that the defendant knew the controlled substance was being purchased on behalf of a third party.[77] It is in this context that the passage in *Daniels* must be read. The articulated rule applies only when the State attempts to obtain a conviction by alleging a recipient that was not the immediate recipient of the contraband. Our conclusion is further supported by the summary in *Daniels* of the rules applicable to constructive transfers:

1. Prior to an alleged delivery, the transferor must have either direct or indirect control of the substance transferred. *Rasmussen, supra.*

2. The transferor must know of the existence of the transferee. *Gonzales* [sic], *supra.*[78]

The point was not that the transfer must include an intermediary but that the transferor must have knowledge of the transferee. When the transferee alleged is not the immediate transferee, then for the evidence to be sufficient, the defendant must have contemplated that there would in fact be a third party transferee. *Daniels* and *Gonzalez* did not hold that an intermediary was required for all constructive transfers.

We also disagree with the *Warren* court's contention that *Nevarez* undercut the holding in *Queen.* In *Nevarez*, a co-defendant slid a bag containing marijuana over to Pacheco, an undercover officer.[79] Pacheco then took the bag and tore it open,[80] but the co-defendant refused to permit the him to completely remove the bag until after payment, which never occurred because the bust signal and arrest occurred shortly thereafter.[81] This Court held that the defendant was properly convicted of an actual transfer pursuant to the law of parties.[82] In its discussion, the Court cited a definition of "deliver" from Webster's Ninth Collegiate Dictionary and the Ballentine's Law Dictionary definition of "delivery" quoted in *Daniels.*[83] While *Nevarez* did quote that part of Ballentine's that said a delivery can be accomplished by "making a thing available to another, placing it within his reach," the Court did not apply that definition to the facts of the case.[84] Instead, the Court held that "the 'actual transfer' of the marihuana occurred pursuant to the law of parties the *instant* that Pacheco *physically took and inspected* the marihuana offered him by appellant's co-defendant."[85] Despite the quote from Ballentine's, the Court did not say that sliding the contraband toward the recipient was enough to effectuate an actual transfer. Even if it had, sliding contraband close to the recipient is not the same as directing the recipient to contraband that is not immediately within reach. It is true that a physical taking of the contraband completes an actual transfer, but that does not exclude the possibility that a constructive transfer could occur beforehand, when the defendant directs the recipient to retrieve the contraband.

#### 4. Conclusion

*Queen* was correct in holding that one method of constructive transfer is for the transferor to instruct the recipient

77. 588 S.W.2d 574, 577 (Tex.Crim.App.1979).

78. *Daniels,* 754 S.W.2d at 221–222.

79. 767 S.W.2d at 768.

80. *Id.*

81. *Id.* at 767–768.

82. *Id.* at 768.

83. *Id.*

84. *Id.*

85. *Id.* (emphasis added).

on the location of the contraband. If the contraband is already in place, the constructive transfer is complete at the time the transferor gives the instruction. When the recipient retrieves the contraband, there is then a completed actual transfer. While *Stolz* and *Warren* appear to have reached the right result in each of their cases, since an actual transfer did take place, their conclusion that no constructive transfer occurred is incorrect, and to the extent they so held, we disavow their reasoning. In the present case, appellant constructively transferred the cocaine when he instructed the undercover officer as to its location. The evidence is therefore sufficient to support a conviction for constructive transfer. That the evidence also shows an actual transfer is of no consequence in this case.

The judgment of the Court of Appeals is affirmed.

JOHNSON, J., filed a dissenting opinion in which PRICE, J., joined.

WOMACK, J., concurred in the result.

JOHNSON, J., dissenting in which PRICE, J., joined.

It is fairly easy, in the civil context, to differentiate between an "actual" transfer and a "constructive" transfer. The existence of legal substitutes for actual possession, such as deeds and titles, allows for a "constructive" transfer of ownership without the relinquishment or assumption of physical control over the item in question. Such transfers of ownership are governed by contract law, and are enforceable in the courts. However, in the context of illegal transactions involving controlled substances, the line is more difficult to draw.

The common element in the criminal cases discussing "constructive" transfer appears to be a manifestation of intent by the transferor to relinquish control over the item in question before the intended transferee actually has physical control of that item. Take, for example, a situation in which an individual places an item in a particular spot, leaves the area, and then calls the intended transferee with instructions about where to find the item. In such a case, the transfer would be a "constructive" transfer, despite the absence of an intermediary, because the transferor has already relinquished control over the item when he informs the transferee of its whereabouts. Similarly, when an individual places an item in the mail for delivery to the intended recipient, the sender has relinquished control over the item, although the recipient will not have actual possession of the item until it is delivered. Both situations are examples of "constructive" transfer, as described by *Queen v. State*, 662 S.W.2d 338, 340 (Tex.Crim.App.1983).

Although, as *Warren* and *Nevarez* indicate, an actual transfer does not require placement of the item directly in the hands of the intended transferee, it does seem to require a simultaneous relinquishment of control by the transferor and assumption of control by the transferee. *See, Nevarez v. State*, 767 S.W.2d 766, 768–69 (Tex.Crim.App.1989); *Warren v. State*, 15 S.W.3d 168, 171 (Tex.App.-Texarkana, 2000). Therefore, the act of leaving an item in a particular location and then advising the intended transferee of that location would be a constructive transfer only if the transferor is no longer in a position to retrieve the item. If, however, the transferor is in as good a position to exercise physical control over the item as the intended transferee, there can be no constructive transfer. Likewise, the mere placement of a packet of contraband on the ground between the transferor and the transferee, rather than handing the packet from one to the other, does not change

what would clearly be an actual transfer into a constructive transfer.

In this case, when appellant placed the packet of cocaine on the ground, he did not relinquish control over it, as evidenced by the fact that the undercover officer picked up the cocaine and *then* haggled with appellant over the price. Therefore, I believe the transaction in this case was indeed an actual transfer.

I respectfully dissent.