In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-382 CR


____________________



JAMES MICHAEL HENDERSON, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 1st District Court


Jasper County, Texas


Trial Cause No. 9391 JD






MEMORANDUM OPINION


 A jury convicted appellant James Michael Henderson of delivery of a controlled
substance, less than one gram, enhanced with two prior felony convictions, and assessed
punishment at twenty years confinement in prison. See Tex. Health & Safety Code Ann.
§ 481.112(b) (Vernon 2003); Tex. Pen. Code Ann. § 12.42(a)(2) (Vernon Supp. 2005). 
Henderson's sole argument on appeal challenges the legal sufficiency of the evidence
supporting the verdict. 

 Louisiana narcotics agents Ray Ortiz and Sylvester Denmond testified at trial that they
were assigned to the narcotics task force and acted undercover to assist local authorities in
a narcotics operation in Jasper County, Texas on August 7, 2002. Officer Denmond drove
the unmarked vehicle and Officer Ortiz rode in the passenger's seat. A surveillance camera 
captured images of drug transactions at the vehicle's window. 

 Officers Ortiz and Denmond testified they were traveling to an area of Jasper known
for drug activity when Henderson honked and flagged them down. Officer Denmond
testified Henderson pulled his late model Lincoln Town Car up to their vehicle; his driver's
side window was approximately two feet from their driver's side window. Henderson asked
them what they were looking for, and the officers told him they were looking to buy crack
cocaine. Henderson agreed to sell them fifty dollars worth of cocaine and instructed them
to follow him to another location. 

 The officers followed him to a residence on Hale Street. Officer Ortiz testified
Henderson got out of the car and then motioned for them to continue past him, presumably
because a marked police car was further down Hale Street. Henderson walked to the front
yard of the house. The officers drove around the area in order to allow enough time for the
patrolman to be notified of their operation and to leave the area. Officers Ortiz and Denmond
returned to the residence and noticed Henderson and several other people in front of the
house. Two people in the yard, one later identified as Eric Porter, approached their vehicle
and Porter asked them what they wanted. Before the officers had a chance to answer, Porter
"mentioned 50 as if he already knew." The officers testified Porter returned to the yard, and
they observed Henderson handing Porter the cocaine. Porter came back to their vehicle,
pinched off some of the crack, and then gave it to Officer Ortiz. Approximately one week
later, the officers identified Henderson from a photo spread as the person who flagged them
down, led them to Hale Street, motioned them past, and handed the cocaine to Porter. 

 The videotape from the concealed camera in the unmarked car was admitted into
evidence and played at trial. The audio portion was not played, but as the jury watched the
videotape, Officer Ortiz testified to the officers' conversation with Henderson and
Henderson's offer to sell them cocaine. The video portion shows Porter approaching the car,
leaving, and then returning to effectuate the transfer. Henderson's image is never depicted
on the video. 

 Tyron Grant and Eric Porter testified for the defense. Grant, a man identified on the
videotape with Porter, testified he delivered the cocaine to the undercover officers but did
not get the cocaine from Henderson. Porter denied obtaining any illegal drugs from
Henderson on the day Henderson offered to sell cocaine to officers Denmond and Ortiz. On appeal, Henderson asserts the evidence was legally insufficient to support his
conviction. A legal sufficiency review requires the appellate court to view all the evidence
in the light most favorable to the verdict to determine whether a rational fact finder could
have found each element of the offense beyond a reasonable doubt. Ross v. State, 133
S.W.3d 618, 620 (Tex. Crim. App. 2004) (citing Jackson v. Virginia, 443 U.S. 307, 319, 99
S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The jury, as fact finder, is the sole judge of the
credibility of the witnesses and the weight to be given their testimony. Margraves v. State,
34 S.W.3d 912, 919 (Tex. Crim. App. 2000). It is within the jury's "exclusive province" to
resolve any evidentiary conflicts. Id. (quoting Losada v. State, 721 S.W.2d 305, 309 (Tex.
Crim. App. 1986)). 

 The elements of delivery of a controlled substance, as charged in the indictment, are:
(1) a person, (2) knowingly, (3) delivers, (4) a controlled substance. Tex. Health & Safety
Code Ann. § 481.112(a) (Vernon 2003); see Lopez v. State, 108 S.W.3d 293, 297 (Tex.
Crim. App. 2003). A delivery may be effectuated through actual transfer or constructive
transfer. See Tex. Health & Safety Code ann. § 481.002(8) (Vernon Supp. 2005). The
indictment in this case alleges delivery by actual or constructive transfer and the judgment
does not specify the type of transfer upon which the jury based its verdict. 

 Henderson argues there is insufficient evidence to prove either actual or constructive
transfer. He states the record fails to show he actually delivered the cocaine, or directed its
delivery, to the undercover officers. Henderson asserts the evidence only shows he led the
undercover officers to people who in turn, sold the officers the cocaine. He says the record
does not show he obtained a seller for the undercover officers and that "[a]t most, [he] only
informed the seller (Eric Porter) of Officers Ortiz and Denmond's desire to buy drugs." 

 In Donley v. State, the Court described the difference between the two types of
transfers as follows:

 An actual transfer consists of a complete transfer of real
possession and control of the contraband from the transferor to
the transferee or his agents, while a constructive transfer covers
a variety of situations where the transferor does not manually
transfer the contraband to the transferee, but may include a
transfer through an intermediary and a transfer effected by
telling the recipient where the contraband is located. 


140 S.W.3d 428, 429 (Tex. App.--Beaumont 2004, no pet.) (citing Sims v. State, 117 S.W.3d 

267, 270-77 (Tex. Crim. App. 2003)). Officers Ortiz and Denmond both testified Henderson 
flagged them down, negotiated the sale, and then led them to the residence where the officers
were sold cocaine for the negotiated price. Both officers testified that before Porter sold
them the drugs they saw him obtain the drugs from Henderson. The officers' testimony
demonstrates Henderson directly controlled the drugs and Henderson clearly knew Porter
would then transfer the drugs to the officers. Henderson's actions constituted constructive
transfer when he voluntarily relinquished possession and control of the drugs to Porter. See
Sims, 117 S.W.3d at 272 (explaining constructive transfer is complete when one entrusts the
drugs to an intermediary for delivery). Considering the evidence in the light most favorable
to the verdict, a rational fact finder could have found each element of the offense beyond a
reasonable doubt. We overrule Richard's sole issue and affirm the trial court's judgment. 

 AFFIRMED.


 ___________________________________

 DAVID GAULTNEY

 Justice




Submitted on March 7, 2006

Opinion Delivered May 10, 2006

Do Not Publish


Before McKeithen, C.J., Gaultney and Horton, JJ.