In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-520 CR


____________________



BRIAN ANDREW WILLIAMS, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 410th District Court


Montgomery County, Texas


Trial Cause No. 05-01-00499-CR






 MEMORANDUM OPINION 


 The State indicted Brian Andrew Williams for delivering between one and four grams
of cocaine to a named informant by actual or constructive transfer, and offer to sell. Tex.
Health & Safety Code Ann. § 481.112(c) (Vernon 2003). Williams waived his right to
a trial by jury, and the trial court found him guilty following his trial on October 12, 2005. 
The trial court subsequently assessed punishment at fifteen years' confinement in the
Institutional Division, Texas Department of Criminal Justice, with credit for time served. We
affirm.

 In his sole appellate issue, Williams challenges the legal sufficiency of the evidence
to support his conviction. He argues that although the evidence showed a delivery of cocaine
to the undercover police officer in the hotel room where the transaction occurred, it did not
show his delivery of the cocaine to the confidential informant as alleged in the indictment. 
With respect to the legal sufficiency of the evidence in a criminal case, we review all of the
evidence in a light most favorable to the verdict to decide if any rational trier of fact could
find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Evans v. State, 202 S.W.3d 158, 161
(Tex. Crim. App. 2006) (quoting Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App.
2005)). 

 Thus, the issue on appeal is whether the evidence legally supported the trial court's
conclusion that Williams delivered cocaine to the State's confidential informant by actual or
constructive transfer or offer to sell. The evidence at the trial included the testimony of the
undercover officer. The undercover officer's testimony established that in response to an
earlier telephone call from the confidential informant, Williams knocked on the door to the
room and the confidential informant answered. Both the undercover officer and the
confidential informant were in the room. When Williams entered, he walked directly into
the bathroom and the confidential informant followed him to the bathroom door. During the
conversation between Williams and the confidential informant, a dispute arose regarding the
number of rocks of crack cocaine that Williams showed the confidential informant. At that
point, the undercover officer went into the bathroom, searched the confidential informant's
pockets in Williams's presence, and looked on the floor for anything that might have
dropped. At that point, the undercover officer stated, "we didn't want any problems. We just
wanted to party and [I] asked him if he would take - - we had originally ordered up to $200
worth, and I asked him if he would accept $180 for what he had. He agreed on that. I paid
him the $180, and he left the room." The undercover officer testified that after offering $180
as a compromise that Williams handed the narcotics directly to him. The State, as part of its
evidence, also played a surveillance videotape concerning the transaction. 

 Williams argues that there was no evidence of an offer to sell, an actual transfer, or
a constructive transfer to the confidential informant. He further asserts that it is essential that
the State prove receipt of the narcotic by the person to whom the State alleged delivery in its
indictment. Specifically, Williams concludes that a rational trier of fact could have found
delivery to the undercover officer but not to the confidential informant, and points to the fact
that the indictment did not allege delivery to the undercover officer. In response, the State
contends that: "Although [Williams] ultimately transferred the crack cocaine to [the
undercover officer] for $180, the conviction should be upheld if there is sufficient proof that
[Williams] offered to sell [the confidential informant] the crack cocaine." 

 Under the terms of the applicable statute, a person commits a felony offense if he
knowingly or intentionally "manufactures," "delivers," or "possesses with intent to deliver"
a controlled substance. Tex. Health & Safety Code Ann. § 481.112(a) (Vernon 2003). 
Delivery of a controlled substance, the offense with which Williams stood charged, may be
accomplished in one of three ways: by actual transfer, constructive transfer, or an offer to
sell. Tex. Health & Safety Code Ann. § 481.002 (8) (Vernon Supp. 2006); Thomas v.
State, 832 S.W.2d 47, 50-51 (Tex. Crim. App. 1992). Even where, as here, the indictment
for the crime is pled in the conjunctive, the State is entitled to submit each method it has
alleged separately. Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). Thus,
based on the indictment under which Williams was tried, the State had to prove that
Williams: (1) made an actual delivery of cocaine to the confidential informant; or, (2) made
a constructive delivery of cocaine to the confidential informant; or, (3) offered to sell cocaine
to the confidential informant.

 The evidence showed that: (1) the confidential informant initiated the call that
precipitated Williams's appearance at the hotel; (2) the confidential informant asked
Williams how much he wanted for the cocaine; (3) the confidential informant offered to
purchase cocaine from Williams for $200; (4) the confidential informant then disputed the
amount of cocaine Williams had agreed to deliver in return for $200; (5) after the undercover
officer told Williams that "[w]e just wanted to party," Williams handed the cocaine to the
undercover officer in return for $180 dollars. Based on this evidence, we conclude that the
trial court, as fact-finder, could rationally conclude that Williams offered to sell the cocaine
in his possession to the confidential informant for $200. 

 The evidence also supports the judgment under a theory of constructive delivery. 
Constructive transfers occur in a variety of situations where the dealer does not hand the
drugs directly to the person who is going to use the drugs. Sims v. State, 117 S.W.3d 267,
270-77 (Tex. Crim. App. 2003). A constructive transfer does not require proof that actual
delivery to the confidential informant was completed subsequent to Williams's delivery to
the undercover officer. Id. at 272. The circumstances of the transaction and the statements
made by the parties in the transaction allowed the fact-finder to conclude that the confidential
informant, although not handed the cocaine, would be using it. 

 Constructive transfer "only requires that when the State alleges constructive transfer
to an alleged ultimate recipient that the accused must have contemplated that his initial
transfer would not be the final transaction in the chain of distribution." Daniels v. State, 754
S.W.2d 214, 221 (Tex. Crim. App. 1988). Because the evidence showed that Williams could
reasonably anticipate that the confidential informant would use the cocaine he handed to the
undercover officer, the trial court could rationally conclude the State proved that Williams
constructively delivered the cocaine to the confidential informant, as alleged in the
indictment. 

 Viewing the evidence in a light most favorable to the prosecution, we conclude that
the trial court could have found Williams guilty beyond a reasonable doubt of either the offer
to sell cocaine or its constructive delivery, as charged in the indictment. Accordingly, we
overrule Williams's sole issue, and affirm the trial court's judgment.

 AFFIRMED. 

 ____________________________

 HOLLIS HORTON

 Justice


Submitted on December 11, 2006

Opinion Delivered March 7, 2007

Do Not Publish


Before McKeithen, C.J., Gaultney and Horton, JJ.