**Affirmed and Memorandum Opinion filed December 6, 2011.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-10-00883-CR

_____

**MALCOLM DEMORRIS BUSH, Appellant**

**V.**

**STATE OF TEXAS, Appellee**

On Appeal from the 208th District Court
Harris County, Texas
Trial Court Cause No. 1181107

## MEMORANDUM OPINION

Appellant, Malcolm Demorris Bush, challenges his conviction for delivery of a controlled substance. In one issue, appellant contends the evidence is insufficient to support his conviction. We affirm.

# I. FACTUAL AND PROCEDURAL HISTORY

Officer Bryan Davis of the Houston Police Department was working undercover as part of a "buy-bust" narcotics operation when he made contact with Charles Sarpy and purchased 100 "tabs" of ecstasy from him. When Davis made this purchase, he "believed [Sarpy] to be able to sell more based on conversations" they had. Davis subsequently asked Sarpy to "put together a thousand tabs of Ecstasy." Sarpy confirmed that he could get the amount and the two arranged a date to make the transfer.

On August 28, 2008, Davis and Sarpy met at the Club Exotica to make the transfer of the 1000 "tabs" of ecstasy for about $4,600.[1] When Davis arrived, he approached a black Suburban vehicle and entered the rear passenger-side door. Davis testified that when he got into the vehicle, Sarpy was seated in the driver's seat and appellant was in the front passenger seat, directly in front of Davis. Davis stated that Sarpy was supposed to have the ecstasy with him when he arrived at the club, but shortly after entering the Suburban, Davis learned that the drugs would be delivered by another party. Davis told Sarpy and appellant that the money was locked in the trunk of his car. Sarpy instructed appellant to call "Old Boy" to find out when the ecstasy would arrive. Once Davis was satisfied that the narcotics were on the way, he exited the Suburban and went to his vehicle to wait.

While Davis waited in his vehicle, appellant exited the Suburban and walked out of Davis's sight toward the front of the club. Sarpy then approached Davis's vehicle and told him, "[I]t's here. It's just going to be a minute." Davis further testified that Sarpy said he did not have enough money to purchase the entire amount from "Old Boy," and "Old Boy" would not "let it walk." According to Davis, this meant that

---

[1] It is unclear from the record whether the agreed price was $4,600 or $4,650.

[Sarpy] was not in a position to buy the narcotics, straight-up buy it from the person that was bringing it to him . . . . So that person had to bring it to him and was only going to be out five minutes without the money while Sarpy came over and got the money from me. And then [Sarpy] would take it back to him.

Sarpy then went to the front of the Club and out of Davis's sight to retrieve the narcotics. A couple of minutes later, Sarpy returned to Davis's vehicle holding something underneath his shirt. Once in the vehicle, Sarpy removed a package from beneath his shirt. The package contained 916 "tabs" of ecstasy in a large bag with smaller bags inside. Davis testified that Sarpy told him there were 1000 "tabs" in the package. Davis did not count the pills at that time, but instead gave his "bust signal" and counted out the money to pay Sarpy for the narcotics. At that point, police officers arrived and took both Davis and Sarpy into custody.[2]

Officer Ferdinand Rodriguez testified that he had been maintaining surveillance on the operation from an unmarked vehicle. Rodriguez stated that he saw appellant exit the Suburban, come around to the front of the club, and get into a black Impala. He testified that he saw appellant tuck something into his waistband area upon exiting the Impala, then saw appellant and Sarpy make a "hand-to-hand" transaction close to the club's entrance. Rodriguez testified that he could not see what exactly was transferred from appellant to Sarpy. Rodriguez stated that Sarpy then turned and headed toward Davis's vehicle.

Sharmistha Patel of the Houston Police Department Crime Lab testified that she tested the substance confiscated from the scene and determined that it was methylenedioxy methamphetamine, more commonly known as ecstasy. She tested only thirty grams of the substance, but testified that, based on the similarity in color and size, the remainder of the substance would also test positive as ecstasy.

---

[2] Davis's apparent "arrest" was part of the undercover operation.

3

The jury found appellant guilty of delivery of a controlled substance "weighing by aggregate weight, including any adulterants or dilutants, more than 4 grams and less than 400 grams," as charged in the indictment. The judge sentenced appellant to fifteen years' confinement in the Texas Department of Criminal Justice, Institutional Division.

## II. ANALYSIS

Appellant argues that the evidence is legally insufficient to support his conviction for delivery of a controlled substance. Under the terms of the indictment, the State could prove the element of delivery through evidence of actual delivery, constructive delivery, or an offer to sell. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (West 2010) ("'Deliver' means to transfer, actually or constructively, to another a controlled substance, . . . regardless of whether there is an agency relationship. The term includes offering to sell a controlled substance . . . .").[3] Appellant contends that the conviction cannot stand because the State failed to present legally sufficient evidence that he "delivered" the controlled substance to Davis within the meaning of that term. In three arguments, appellant attacks the sufficiency of the evidence as it relates to each method of delivery alleged in the indictment.

### A. Standard of Review

When reviewing the sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality opinion); *Pomier v. State*, 326 S.W.3d 373, 378 (Tex. App.—Houston [14th Dist.] 2010, no pet.). Although we consider

---

[3] *See also id.* at §481.002(5) ("'Controlled substance' means a substance, including a drug, an adulterant, and a dilutant, listed in . . . Penalty Groups 1, 1-A, or 2 through 4 . . . ."); *id.* at § 481.103(a) ("Penalty Group 2 consists of: (1) any quantity of . . . 3,4–methylenedioxy methamphetamine . . . .").

4

everything presented at trial, we do not reevaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. *Williams v. State*, 255 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Our review includes both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id*. If the record supports conflicting inferences, we presume that the trier of fact resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Id.*

In all sufficiency challenges, the evidence is measured against a hypothetically correct jury charge. *Fuller v. State*, 73 S.W.3d 250, 252 (Tex. Crim. App. 2002). This is true even where there are no allegations of jury charge error. *Id.* The indictment is the basis of what must be proved, and the hypothetically correct jury charge must be "authorized by the indictment." *Gollihar v. State*, 46 S.W.3d 243, 256 n.20 (Tex. Crim. App. 2002). Thus, "the hypothetically correct charge may not modify the indictment allegations in such a way as to allege 'an offense different from the offense alleged in the indictment.'" *Id*. (quoting *Planter v. State*, 9 S.W.3d 156, 159 (Tex. Crim. App. 1999)).

Conviction for delivery of a controlled substance requires proof that a person knowingly or intentionally delivered a controlled substance. TEX. HEALTH & SAFETY CODE ANN. §§ 481.103(a)(1), 481.113(a). "Deliver" can mean actual transfer, constructive transfer, or an offer to sell. *Id*. § 481.002(8). Here, the State alleged in the indictment that appellant knowingly delivered a controlled substance to Davis. In each of the three paragraphs of the indictment, the State alleged a different method of delivery—the first by actual transfer, the second by constructive transfer, and the third by

5

offer to sell. Thus, the State was permitted to prove appellant delivered the controlled substance by any of the three methods alleged.[4] *See Gollihar*, 46 S.W.3d at 256 n.20 (explaining that alternative methods of committing the same offense may be alleged in the indictment and included in the jury charge). A hypothetically correct jury charge would require the State to prove beyond a reasonable doubt that appellant delivered the controlled substance by any of the three methods alleged in the indictment. The jury charge presented all three of those methods. Where, as here, the jury returned a general verdict, we will affirm if the evidence is sufficient to support a finding of guilt under any of the allegations submitted. *Fuller v. State*, 827 S.W.2d 919, 931 (Tex. Crim. App. 1992). Thus, if we conclude the State presented evidence legally sufficient to prove one of the methods of delivery, we must affirm the judgment of the trial court. *See id.*

## B. Constructive Transfer

Appellant argues that in order to prove constructive delivery, the State had to show both that the substance "belonged" to appellant, and that the person who made the actual transfer did so at the "instance and direction" of appellant. Appellant contends that the "idea behind the 'constructive transfer' form of delivery is to create a vehicle for prosecution of drug 'kingpins' or ringleaders who are wise enough to not ever have the drug in their own hands." Further, appellant argues that even if it was shown that he possessed the narcotics, he was only a "courier" and his control was relinquished once he handed the ecstasy to Sarpy. Appellant cites no authority for these propositions, and they are not supported by the text of the statute.

Contrary to appellant's arguments, constructive delivery can be proved by evidence of the defendant's control of the substance *before* the transfer. *See Queen v. State*, 662 S.W.2d 338, 340–41 (Tex. Crim. App. 1983) ("While other possible forms of constructive transfer can be postulated as a method of 'delivery' the critical factor is that 'prior to the

---

[4] An instruction on the law of parties was not included in the jury charge.

delivery the substance involved was directly or indirectly under the defendant's control." (quoting *Rasmussen v. State*, 608 S.W.2d 205, 210 (Tex. Crim. App. 1980))). Where there is a constructive transfer, there must be evidence that (1) prior to delivery, the transferor had control, directly or indirectly, of the transferred substance; and (2) the transferor knew of the existence of the ultimate transferee. *Sims v. State*, 117 S.W.3d 267, 277 (Tex. Crim. App. 2003). "When the transferee alleged is not the immediate transferee, then for the evidence to be sufficient, the defendant must have contemplated that there would be a third-party transferee." *Id.*

Davis testified that Sarpy did not have the narcotics with him when he arrived at the scene of the undercover operation, but Sarpy ultimately transferred 916 "tabs" of ecstasy to him. He also testified that appellant was in the Suburban when Davis and Sarpy discussed their arrangement that Sarpy would transfer the drugs to him in exchange for approximately $4,600. Thus, the evidence demonstrates that appellant knew Davis was the ultimate transferee. After hearing this conversation, appellant left Sarpy and Davis, entered a black Impala, and exited the Impala while tucking something into his waistband. Sarpy then informed Davis that the drugs had arrived, and walked to the front of the club where Rodriguez saw appellant hand Sarpy something. Sarpy returned to Davis with the narcotics in a bag under his shirt. This evidence is sufficient to show that appellant exercised control over the narcotics. *See Jackson v. State*, 84 S.W.3d 742, 745 (Tex. App.—Houston [1st Dist.] 2002) (holding that evidence was sufficient to show control in constructive transfer where appellant was asked to toss a bag of marihuana that was near the couch where she was sitting to the dealer in that transaction).[5] Appellant argues that the evidence is insufficient to support an inference that he gave Sarpy the narcotics because

---

[5] *See also Johnson v. State*, Nos. 14-03-00419-CR & 14-03-00420-CR, 2004 WL 414288, at *2 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd) (mem. op., not designated for publication) (finding sufficient evidence of control exercised in a constructive transfer when a third party approached the appellant, who went into a home, returned and gave something to the third party, and the third party then delivered a controlled substance to the undercover officers).

Rodriguez could not positively identify the item that was transferred. But such direct evidence is not needed; circumstantial evidence is sufficient to support a conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Examining all of the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Brooks*, 323 S.W.3d at 895; *Pomier*, 326 S.W.3d at 378. Thus, we overrule appellant's sole issue.

## III. CONCLUSION

The evidence is sufficient to support appellant's conviction for delivery of a controlled substance using the method of constructive transfer. Because the State was required to prove no more than one method of delivery, we need not determine whether the evidence was sufficient to show transfer by any other means. *See Fuller*, 827 S.W.2d at 931. We therefore affirm the judgment of the trial court without addressing appellant's remaining arguments.


/s/     Tracy Christopher
Justice


Panel consists of Chief Justice Hedges and Justices Anderson and Christopher.

Do Not Publish — TEX. R. APP. P. 47.2(b).