Santiago Alberto **HEBERLING,** Appellant,

v.

The **STATE** of **Texas,** Appellee.

No. 1034–91.

Court of Criminal Appeals of Texas, En Banc.

June 24, 1992.

---

Robert G. Turner, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Kimberly Aperauch Stelter and Ted Wilson, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

On May 18, 1990, Appellant, Santiago Alberto Heberling, was convicted of delivery of more than 400 grams of a controlled substance, namely cocaine. See Tex. Health & Safety Code § 481.001 et seq. The trial judge then sentenced appellant to twenty years confinement and assessed a $5,000 fine. The First Court of Appeals affirmed appellant's conviction and sentence in an opinion published in part. *Heberling v. State*, 814 S.W.2d 183 (Tex. App.—Houston [1st Dist.] 1991). We granted appellant's petition for discretionary review, pursuant to Tex.R.App.Pro 200(c)(2), (3) and (4), to determine the following: (1) Whether the evidence was sufficient to sustain appellant's conviction for delivery by actual transfer, and (2) whether the Court of Appeals erred in holding that cocaine not actually offered or received in evidence at trial was nonetheless "placed before the jury" as required by the trial court's charge to the jury. We will affirm.

The relevant facts in this case are not disputed by the parties. We therefore adopt the summary of the facts as set forth by the Court of Appeals:

On November 14, 1988, Houston police Officer Nick Wilson, while posing as the brother-in-law of a police informant, Marcelo Nagid, made a buy of cocaine. Wilson met with Nagid's neighbor, Alberto

Ilarty, and Fernando Otarola at Nagid's apartment. As part of the ruse, Wilson brought $22,000 in cash. After seeing the money, Ilarty told Wilson to go with him to get the cocaine. Wilson refused, and sent Nagid to go with Ilarty.

Nagid drove his van to an apartment complex across the street. Ilarty instructed Nagid to park in the parking lot behind the apartment complex. They waited approximately five minutes before appellant drove up in a pickup truck, and parked in front of Nagid's van. Ilarty and Nagid got out of the van and approached the pickup. Ilarty told appellant that the money had been counted and he should "bring over the cocaine." Appellant left, and returned in a blue Camaro. Appellant handed a Ritz cracker box to Ilarty. After appellant handed the box to Nagid, who in turned [sic] handed the box to Nagid, Nagid opened it and saw that it contained what appeared to be a kilo of cocaine.

Nagid returned to his van and went back to his apartment. Appellant followed him in the blue Camaro, and Ilarty remained in the parking lot. Nagid entered his apartment and handed the box to Wilson. After Wilson determined that the box contained cocaine, he signaled surveillance police officers to arrest those parties involved in the transaction. Otarola was arrested inside Nagid's apartment. Nagid was taken outside and asked to identify appellant, who was then inside a police patrol car. Nagid identified appellant as the same person who had followed him after giving Ilarty the cocaine.

*Heberling v. State*, 814 S.W.2d at 183–84.

### I.

Appellant's first and second grounds for review assert that the facts of this case do not support the charge given to the jury, and that the evidence therefore is insufficient to support his conviction.[1] Appellant was indicted for delivery by actual transfer, constructive transfer and offer to sell.[2] However, at trial, the State withdrew the constructive transfer and offer to sell counts. At the conclusion of appellant's presentation of his evidence, the trial judge charged the jury on (1) delivery by actual transfer of the cocaine from appellant to Officer Wilson, and (2) delivery by actual transfer of the cocaine from appellant's codefendants to Wilson, under the law of

---

1. The jury charge stated, in relevant part, as follows:

> All persons are parties to an offense who are actually guilty of acting together in the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.
>
> A person is criminally responsible for an offense committed by the conduct of another, if, acting with intent to promote or assist the commission of the offense, he solicits encouraged, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.
>
> Now, if you find from the evidence beyond a reasonable doubt that in Harris County, Texas, on or about the 14th day of November, 1988, the defendant, Santiago Heberling, did then and there unlawfully, intentionally or knowingly deliver *by actual transfer to N.C. Wilson*, a controlled substance, namely cocaine, weighing by aggregate weight, including any adulterants or dilutants, at least 400 grams; or if you find from the evidence beyond a reasonable doubt that in Harris Coun-

ty, Texas, on or about the 14th day of November, 1988, Alberto Ilarty and/or Fernando Otarola did then and there unlawfully, intentionally or knowingly deliver *by actual transfer to N.C. Wilson*, a controlled substance, namely cocaine, weighing by aggregate weight, including any adulterants or dilutants, at least 400 grams, and that the defendant, Santiago Heberling, with the intent to promote or assist the commission of the offense, if any, solicited, encourage, directed, aided or attempted to aid Alberto Ilarty and or/Fernando Otarola to commit the offense, if he did, then you will find the defendant guilty of delivery of a controlled substance, as charged in the indictment.

(Emphasis supplied).

2. The Texas Controlled Substances Act § 481.-002(8) provides:

> "Deliver" means to transfer, actually or constructively, to another a controlled substance, counterfeit substance, or drug paraphernalia, regardless of whether there is an agency relationship. The term includes offering to sell a controlled substance, counterfeit substance, or drug paraphernalia.

parties. The jury returned a general verdict of guilt.[3]

The court of appeals first noted that a conviction for delivery by actual transfer will be sustained under the law of parties, even if the transfer is made through an informant acting as an intermediary. *Heberling v. State*, 814 S.W.2d at 185, citing, *Boyer v. State*, 801 S.W.2d 897 (Tex.Cr. App.1991). The court of appeals then found that the evidence adduced at appellant's trial demonstrated that, at the time of the transfer of cocaine from Nagid to Wilson, there existed a written agreement between Wilson, Nagid, Nagid's attorney Steve Hebert and Bob Stabe of the Harris County District Attorney's Office. See Appendix. Based on this agreement, the court of appeals held that Nagid was, in effect, Wilson's agent. The court of appeals then concluded: "Because the evidence was sufficient to show appellant made an actual transfer to Nagid, and that Nagid was Wilson's agent, we hold the evidence was sufficient to support a conviction for actual transfer to Wilson." *Heberling v. State*, 814 S.W.2d at 186.

Appellant argues that the trial court's failure to include Nagid in the charge as a party, coupled with the State's failure to object to the charge at trial, effectively raised the State's burden of proof by requiring the State to prove that there was an actual, physical transfer of cocaine from appellant or his codefendants to Wilson. In addition, appellant, citing *Conaway v. State*, 738 S.W.2d 692, 700 (Tex.Cr.App. 1987) (Clinton, J., concurring), contends that the existence of an agency relationship between Nagid and Wilson is irrelevant to discerning whether an actual transfer has occurred. Appellant also notes that no jury instruction on agency was requested or given.

The State contends that the evidence at trial clearly demonstrated that Nagid was acting only as an agent of Wilson, and that everyone involved in the drug transaction was aware of this relationship. The State distinguishes this case from *Conaway*, in which the cocaine passed through the hands of an intermediary who was neither an agent of the undercover police officer nor necessary to the transaction. The State also argues that the term "actual transfer" should be given its plain meaning, and that this meaning should be read to include a transferee's agents. We now address the merits of appellant's grounds for review.

■ A jury charge that was not objected to at trial will be reversed only for fundamental error. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Cr.App.1984) (op. on reh'g). That is, the error must be so egregious and have created so much harm that the defendant was denied a fair and impartial trial. Id. The actual degree of harm is determined by looking at the jury charge itself; the state of the evidence, including contested issues and the weight of the probative evidence; the arguments of counsel; and any other information contained in the record. Id. Error predicated on insufficient evidence arising from a jury charge that enlarges on the State's burden of proof is of a fundamental nature. See, e.g, *Arceneaux v. State*, 803 S.W.2d 267 (Tex. Cr.App.1990).

■ Appellant contends that the charge actually tendered to the jury authorized a conviction of delivery by actual transfer only if the jury was capable of finding beyond a reasonable doubt that appellant or appellant's codefendants "actually transferred" cocaine to Officer Wilson. Appellant asserts that because the evidence at trial only showed an actual transfer from appellant's codefendants to *Nagid*, and because Nagid was not included in the law of parties charge, there was no evidence of an actual transfer to *Wilson*. Thus, appellant argues, by not ensuring that Nagid was included as a party, the State acquiesced in a jury charge that effectively enlarged its burden of proof by requiring it to prove

---

**3.** The Verdict of the Jury read as follows:
We the Jury, find the defendant, Santiago Heberling, guilty of delivery of a controlled substance, namely, cocaine, weighing by aggregate, including any adulterants or dilutants, at least 400 grams, as charged in the indictment.

that there was a physical transfer of cocaine from appellant or his codefendants to Wilson. Because the evidence will not support this charge, as worded, appellant argues that he suffered fundamental harm. On the other hand, the State asserts that the term "actual transfer" is broad enough to include within its ambit both the ultimate transferee and the transferee's agents. Thus, claims the State, there was sufficient evidence at trial to support an actual transfer to Wilson, via his agent Nagid, regardless of whether Nagid was included in the charge as a party to the actual transfer.

It is clear that appellant's first and second grounds for review present this Court with only one real issue to resolve: whether the term "actual transfer" encompasses only a transferee who physically receives the transferred item from the transferor, or whether an actual transfer can include a transferee's agents.[4] If the definition of actual transfer contemplates only a transferee, the evidence adduced at trial is insufficient to support a conviction under the jury charge as worded in the instant case. If an actual transfer includes both the transferee and the transferee's agent(s), then we must determine whether the evidence was such that a reasonable jury could have concluded that Nagid was an agent of Wilson. If the answer to that inquiry is in the affirmative, the evidence is sufficient to support appellant's conviction under the jury charge.

Because the term actual transfer is not defined in the Controlled Substances Act, it must be given its plain meaning. *Thomas v. State*, 832 S.W.2d 47 (Tex.Cr.App.1992); *Campos v. State*, 623 S.W.2d 657, 658 (Tex.Cr.App.1981). In *Conaway v. State*, 738 S.W.2d 692, 695 (Tex.Cr.App.1987) (plurality op.), this Court had occasion to construe the ordinary, commonly understood meaning of actual delivery: "Thus, for our purposes, 'actual delivery' consists in completely transferring the real possession and control of a controlled substance from one person to another person." See also, *Nevarez v. State*, 767 S.W.2d 766 (Tex.Cr.App. 1989). Judge Clinton noted in a concurring opinion that: "Actual delivery consists of the giving real possession to the vendee *or his servants or special agents who are identified with him in law and represent him.*" *Conaway v. State*, 738 S.W.2d at 692, quoting Black's Law Dictionary (Revised Fourth Edition). We believe this to be an accurate observation, and we now hold that an actual transfer or delivery, as commonly understood, contemplates the manual transfer of property from the transferor to the transferee *or to the transferee's agents or to someone identified in law with the transferee.*[5]

■ We must now decide whether the evidence at appellant's trial was sufficient to establish an agency relationship between Nagid and Wilson. Although there was no jury instruction on agency, there was substantial evidence presented at trial from

4. Both the State and appellant cite and discuss at length our recent opinions in *Tate v. State*, 811 S.W.2d 607 (Tex.Cr.App.1991) and *Boyer v. State*, 801 S.W.2d 897 (Tex.Cr.App.1991). *Tate* and *Boyer* stand for the proposition that a confidential informant may be properly listed in the jury charge as a party to delivery by actual transfer, even though the informant could not, as an agent of law enforcement, be held criminally responsible for that offense. Because these cases deal with a legal scenario entirely different from the case at bar, we find them inapposite to the pertinent issue in the case at bar.

5. We find our construction of the term "actual transfer" (which encompasses both the transferee and his agents) to be consistent with its general understanding in the civil context. It is a well-settled tenet of commercial law that the

actual delivery of goods to a buyer's agent is tantamount to actual delivery to the buyer. See *Dempsey v. King*, 662 S.W.2d 725 (Tex.App.— Austin 1983); *Walker–Smith Co. v. Jackson*, 123 S.W.2d 993 (Tex.Civ.App.—Amarillo 1938); *Gill Equip. Co. v. Kaufman*, 196 F.2d 800 (5th Cir. 1952); see also, 67 Am.Jur.2d *Sales* § 300 (1985) ("In the absence of any contrary provision in the contract of sale, delivery must be made to the buyer; a delivery to the employee or agent of the buyer authorized to receive such delivery is, however, equivalent to delivery to the buyer."); 77 C.J.S. *Sales* § 157 (1952) ("[D]elivery may be made to the accredited agent of the buyer.... [D]elivery to a person appointed by the buyer to receive the goods, or to any third person at the buyer's request or with his consent ... is sufficient.").

which the jury could have concluded that Nagid was an agent of Wilson or, at the least, that Nagid was identified with Wilson in law and represented him. Foremost, the jury had before it the written agreement between Wilson, Nagid, Hebert and Stabe, in which Nagid agreed to act under Wilson's direction. In addition, there was testimony indicating that the various individuals involved in the cocaine deal understood that Nagid was acting on Wilson's behalf in obtaining the cocaine.

For example, the evidence showed that, in the presence of Ilarty, Wilson instructed Nagid to obtain the cocaine on his behalf. Also, there was testimony that, after the transfer of the cocaine to Nagid was completed, appellant followed Nagid to the apartment in which Wilson waited, apparently to ensure that Wilson actually received the cocaine. When examined in its entirety, this was more than sufficient evidence from which the jury could infer that Nagid was an agent or representative of Wilson.

Under these facts, the evidence was sufficient to support a conviction of delivery by actual transfer under the jury charge given at appellant's trial, pursuant to the notion that Nagid acted simply as an agent of Wilson. Appellant's first and second grounds for review are overruled.

## II.

■ Appellant alleges in his third ground for review that "[t]he First Court of Appeals erred in holding that the exhibit, not placed or received in evidence, was 'placed before the jury' and therefore sufficient to support the charge." Appellant's ground for review centers around the portion of the trial court's charge to the jury that stated as follows: "Before you would be warranted in convicting the defendant you must find from the evidence beyond a reasonable doubt that the exhibit introduced in evidence by the state is cocaine." Appellant correctly notes that the charge, as worded, was not objected to by the State. Appellant contends that although this part of the charge was "surplusage" (i.e., not necessary to the jury's determina-

tion of guilt), that once the trial court incorporated this language into the charge it became a necessary prerequisite to a finding of guilt.

The linchpin of appellant's argument is found in *Arceneaux v. State*, 803 S.W.2d 267, 271 (Tex.Cr.App.1990), in which we held that an instruction that required the jury to find that the exhibit introduced in evidence by the State was, in fact, cocaine, was not "surplusage" (i.e., extraneous language), when the charge given was not objected to by the State. Thus, in *Arceneaux*, we held that the State was required to prove the exhibit was cocaine "regardless of the fact [that] the prosecution was not required under the circumstances to introduce the actual controlled substance in the first place." Ibid. We agree with appellant that the language of the charge in the instant case (which is identical to the language of the charge given in *Arceneaux*) is likewise not "surplusage." This determination, however, does not end our inquiry.

In *Arceneaux*, the cocaine seized by law enforcement officers was destroyed during testing, thus there was no cocaine for the State to introduce in evidence, even had the State attempted to do so. Ibid. Because of this fact, we held that, "Since there was no cocaine to introduce after laboratory testing, the State could clearly not meet its burden of production." Ibid. This situation contrasts starkly with the instant case, in which there was copious testimony concerning the cocaine from both Officer Wilson and Houston Police Department chemist Claudia Busby, in which the cocaine was marked as an exhibit and physically shown to the jury, and in which the trial court and the parties treated the cocaine as if it had been introduced into evidence.

We find that these facts require a different result than that of *Arceneaux*. Based on the jury's visual inspection of the cocaine and the testimony of Wilson and Busby, we conclude that the jury could have reasonably inferred that the cocaine had been "introduced by the State in evidence" as set forth in the charge. This conclusion is influenced by our recognition that the

average juror is unfamiliar with and has a limited understanding of the various evidentiary and procedural rules governing the trial of a criminal case. Thus, the mere fact that the State did not technically introduce the exhibit is not dispositive of our determination of whether there is sufficient evidence to support the conviction as set forth in the jury charge. More important is whether the plain language of the charge adequately apprised the jury of the facts requisite to convicting appellant.

Because we find that a reasonable jury, unfamiliar with legal lexicon and evidentiary technicalities, could have concluded that the presentation of the cocaine, coupled with the testimony of Wilson and Busby, was sufficient to "introduce" the cocaine in evidence for consideration by the jury, we hold that the evidence, as measured against the jury charge, was sufficient to convict appellant.[6] See, e.g., *Voelkel v. State*, 629 S.W.2d 243, 246–47 (Tex.App.—Fort Worth 1982) (Although cigarette case containing amphetamines was never admitted into evidence, the fact that it was treated as evidence by the trial court and the parties and referred to by a chemist testifying as to its contents was sufficient to render the case in evidence for consideration by the trial court). Based on the foregoing, appellant's third ground for review is overruled.

The judgment of the court of appeals is AFFIRMED.

MILLER, J., concurs in the result.

OVERSTREET, J., dissents.

**6.** We note that this decision is consistent with previous decisions rendered by this Court. For example, in a situation analogous to the case at bar, this Court held that, in the absence of a timely objection, the display of a photograph before the jury coupled with testimony concerning the contents of the photograph is tantamount to introduction of the photograph into evidence. *Harden v. State*, 417 S.W.2d 170, 174 (Tex.Cr.App.1967) (op. on reh'g). Under such circumstances, the photograph may be considered as part of the evidence in support of the judgment. Ibid. We have reached similar conclusions in other fact situations. For example, when testimony is read into the record without objection it is tantamount to introducing into evidence the documents from which such testi-

## APPENDIX

### AGREEMENT

On this the 3rd day of March, 1988, the following agreement was made between Marcelo Nagid, Steve Herbert, attorney for Nagid, Officer N. Wilson of the Houston Police Department, and Bob Stabe of the Harris County District Attorney's Office:

(1) That Nagid is presently charged in the 338th District Court with the offenses of Delivery of a Controlled Substance in cause numbers 490415 and 491939 and the offense of Possession of Marihuana in cause number 491940.

(2) That Nagid has agreed to cooperate with Wilson in making criminal cases which result in the indictments of individuals for the following violations: Aggravated Possession and/or Aggravated Delivery of Penalty Group 1 Controlled Substances and Marihuana.

(3) That Nagid upon receipt of a letter from Wilson to the District Attorney's Office will receive for his cooperation and assistance a recommendation from the District Attorney's Office as to punishment in the aforesaid criminal case in the District Court as set out below.

(4) If Nagid will provide information to law enforcement which:

(a) Results in at least two indictable cases being made on two separate individuals for the offense of Aggravated Possession and/or Aggravated Delivery of Cocaine and the seizure of at least 30 kilograms of Cocaine;

mony was taken. See *Huff v. State*, 576 S.W.2d 645, 647–48 (Tex.Cr.App.1979); *Erwin v. State*, 171 Tex.Crim. 323, 350 S.W.2d 199, 202 (1961). Likewise, when written stipulations not formally admitted into evidence are treated by the trial court as if admitted into evidence, they may be considered in support of the conviction as if formally admitted. *Killion v. State*, 503 S.W.2d 765 (Tex.Cr.App.1973). In addition, we have held that a Texas Governor's Warrant that was treated by the trial court and the parties as if introduced into evidence was properly considered by the court in rendering judgment, notwithstanding the fact that it was neither formally introduced nor admitted into evidence. *Ex Parte Reagan*, 549 S.W.2d 204, 205 (Tex.Cr.App.1977).

(b) Results in at least two indictable cases being made on two separate individuals for the offense of Aggravated Possession and/or Aggravated Delivery of Marihuana and the seizure of at least 3,000 pounds of marihuana;

the State will recommend dismissal of cause numbers 490415, 491939, 491940.

(5) That Nagid fully understands that "indictable" means a case that is legally sufficient to present to a Grand Jury either State or Federal and seek and expect a true bill.

(6) That Nagid understands that he will receive no consideration in his case unless he complies fully with the obligations set forth above, and that trying is of no consequence and will result in no consideration for him.

(7) That Nagid further understands that this agreement will in no way authorize him to break any State or federal laws and that no effort in regard to this agreement counts unless Wilson is aware of its existence prior to its occurrence.

(8) Further, Nagid agrees that he will contact Wilson three times a week and further agrees that he shall not leave Harris County, Texas without contacting Wilson and that failure to comply with these terms will invalidate this agreement.

(9) That Nagid further understands that this agreement will become void at any time Nagid is lying to law enforcement officers or breaking any State or Federal law.

(10) That Nagid further understands that the State agrees to lower the bond in cause no. 490415 from $200,000 to $10,000 as part of this contract and understands that if Nagid violates any part of this agreement then the State of Texas will move to raise the bond back to $200,000.

(11) That Nagid testify truthfully for the State of Texas, if called, in any court proceeding in the State of Texas v. Kevin A. Glenn, cause no. 490414 in the 338th District Court.

(12) That Nagid further understands all work required under the terms of this agreement are to be accomplished within 90 days.

(13) That Nagid fully understands that if he fails to fulfill the above agreement the State of Texas is not bound to make any specific recommendation in the above case.

/s/
Marcelo Nagid
/s/
Steve Hebert
/s/
Officer N. Wilson
/s/
Bob Stabe