In The



Court of Appeals



Ninth District of Texas at Beaumont


____________________



NO. 09-05-430 CR


____________________



ANDY RAY HUBBARD, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 1st District Court


Newton County, Texas


Trial Cause No. ND5631






MEMORANDUM OPINION



 Appellant Andy Ray Hubbard was indicted for knowingly delivering "by constructive
transfer, to Joe Walker, a controlled substance, namely, Cocaine, in an amount of less than
one gram." See Tex. Health & Safety Code Ann. § 481.112(a) (Vernon 2003). A jury
convicted Hubbard, and the trial court assessed punishment at two years of confinement in
a state jail facility. In this appeal, Hubbard contends the trial court erred by overruling his
motions for continuance and mistrial, and the evidence was legally insufficient to support his
conviction. We reverse and render.

The Evidence


 Sheriff Joe Walker testified he arrested Hubbard on February 14, 2005. On that date,
Robert McCain approached Sheriff Walker and volunteered to assist with making drug
arrests. McCain had been previously convicted of drug-related charges, and he had been
arrested for possession of a controlled substance a few days before he approached Sheriff
Walker. During their conversation, Sheriff Walker asked McCain to buy drugs from
Hubbard, and he told McCain he would talk to his deputy about dropping the charge against
McCain. Sheriff Walker placed a fresh tape in a pocket tape recorder and showed McCain
how to use the recorder. Sheriff Walker also obtained a twenty-dollar bill and two five-dollar
bills from the contraband account and photocopied the money. Sheriff Walker instructed
McCain to purchase drugs from Hubbard and then arranged to meet McCain afterwards. 
Sheriff Walker did not follow McCain to the location of the transaction or conduct
surveillance. When the transaction was completed, McCain gave Sheriff Walker two rocks
of crack cocaine and returned the tape recorder.

 After field testing the contraband, Sheriff Walker obtained an arrest warrant and a
search warrant. When Sheriff Walker arrived at Hubbard's home, Hubbard was on a horse,
and Hubbard fled on the horse when Sheriff Walker called out to him. Driving his own
unmarked pickup truck, Sheriff Walker pursued Hubbard and ultimately arrested him. 
Sheriff Walker suspected Hubbard had discarded any drugs in his possession "because his
pockets were pulled out of his pants, and that's something that's happened in times past with
Andy." Because eight to ten people were in Hubbard's house, Sheriff Walker decided not
to execute the search warrant, but he did search the immediate area where Hubbard was
located and arrested. Sheriff Walker did not find drugs or contraband in the area, but
Hubbard's wallet contained the money Sheriff Walker had given McCain to buy the drugs. 
Sheriff Walker testified that the quality of the microcassette recording of the drug transaction
"leaves a lot to be desired," but he identified the voices on the tape as belonging to Hubbard
and McCain. The tape was then played for the jury.

 Deputy Sheriff Scott Duncan of the Newton County Sheriff's Department testified he
served as the backup officer during the arrest of Hubbard. Deputy Duncan photocopied the
money that McCain was to use to purchase drugs from Hubbard. Deputy Duncan also
secured a location for McCain and searched McCain's person and his vehicle, but he did not
search under the vehicle or under the gas cap. After searching McCain's vehicle, Deputy
Duncan released McCain to go to the location where McCain was to meet Hubbard, and
Deputy Duncan went to meet Sheriff Walker.


 Deputy Duncan testified that when the transaction was completed, McCain met the
officers and turned the drugs and the tape recorder over to Sheriff Walker. Deputy Duncan
testified that Sheriff Walker field tested the narcotic and obtained an arrest warrant and a
search warrant. Deputy Duncan forwarded the drugs to the D.P.S. crime lab for analysis. 
Severo Lopez, the drug section supervisor for the Texas D.P.S. crime laboratory, testified
that the substance recovered from McCain contained 0.32 grams of cocaine.

 Captain Ricky Hall testified he had known McCain for many years. According to
Captain Hall, McCain approached the sheriff's department about making a controlled drug
buy. Captain Hall testified that McCain was on parole, and McCain may have served time
for delivery of a controlled substance. Captain Hall took McCain to see Sheriff Walker, and
Sheriff Walker decided to have McCain attempt to purchase drugs from Hubbard. Captain
Hall explained that for a number of years the authorities had suspected Hubbard of dealing
drugs. The officers then gave McCain a tape recorder and money from the contraband
account.

 Captain Hall testified that after the transaction was completed, McCain gave the
investigating officers the tape recorder and a substance that appeared to be crack cocaine.
McCain told the officers that he had purchased the substance from Hubbard. The officers
field tested the substance, which tested positive for cocaine. The investigating officers then
secured a warrant for Hubbard's arrest and went to his residence. When the officers searched
Hubbard, they found the money from the contraband account in his possession.

 McCain testified that he is currently on parole for delivery of a controlled substance. 
After McCain was charged with a crime as a result of a traffic stop, he approached Deputy
Hall about assisting with drug cases. The investigating officers asked McCain to attempt to
buy drugs from Hubbard. After receiving a tape recorder and money, McCain went to
Hubbard's residence. McCain then met with the officers and gave them the cocaine he had
purchased from Hubbard. McCain testified that he had not previously purchased drugs from
Hubbard, but he knows people who have. McCain testified that Sheriff Walker agreed to
drop the case against him in return for buying drugs from Hubbard.

 Linda Alfred, Hubbard's wife, testified that when McCain visited her residence, she,
her mother, her sister, Hubbard, and their children were present. According to Linda, when
McCain knocked on the door, "he looked like he was scared or paranoid or something like
he was high . . . his eyes was big, red and he was kind of shaking." Linda testified that
Hubbard sold McCain a car buffer. Linda and Hubbard then left to visit a gravesite. Upon
returning home, Hubbard went for a ride on his horse. Approximately thirty to forty minutes
later, officers arrived and arrested Hubbard. Linda testified that she asked the officers to
search the residence, but they declined to do so. When asked about the tape recording, Linda
testified that the voice on the tape was not Hubbard's.

 Lashon Davis testified that Hubbard is his sister Linda's fiancé and common-law
husband, as well as the father of his sister's children. Davis testified he was present at
Hubbard's residence when McCain arrived. According to Davis, McCain and Hubbard were
never alone together. Davis testified that McCain and Hubbard discussed a car buffer, and
he denied seeing any transaction involving drugs.

 Dorothy Alfred, Hubbard's mother-in-law, testified that she was present when
McCain visited Hubbard's residence. According to Dorothy, Hubbard and McCain were
never alone during the visit. Dorothy denied hearing anything that sounded like a drug
transaction. Dorothy testified she has "some doubts" regarding whether the voice on the
audiotape belongs to Hubbard.

Standard of Review


 In issue two, Hubbard challenges the legal sufficiency of the evidence to support his
conviction. We address Hubbard's legal sufficiency challenge first because if we determine
the evidence is legally insufficient to support his conviction, we must render a judgment of
acquittal. See Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). In reviewing
the legal sufficiency of the evidence, we consider all the evidence in a light most favorable
to the prosecution to determine if any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319,
99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Swearingen v. State, 101 S.W.3d 89, 95 (Tex. Crim.
App. 2003). We consider all of the evidence, whether properly or improperly admitted, as
well as both direct and circumstantial evidence. Conner v. State, 67 S.W.3d 192, 197 (Tex.
Crim. App. 2001); Muttoni v. State, 25 S.W.3d 300, 308 (Tex. App.--Austin 2000, no pet.).

Analysis


 The elements of the offense of delivery of a controlled substance are: (1) a person;
(2) knowingly or intentionally; (3) delivers; (4) a controlled substance. Tex. Health &
Safety Code Ann. § 481.112(a) (Vernon 2003). Delivery may be made through actual
transfer, constructive transfer, or an offer to sell. Tex. Health & Safety Code Ann. §
481.002(8) (Vernon Supp. 2006). "An actual transfer consists of a complete transfer of real
possession and control of the contraband from the transferor to the transferee or his agents,
while a constructive transfer covers a variety of situations where the transferor does not
manually transfer the contraband to the transferee. . . ." Donley v. State, 140 S.W.3d 428,
429 (Tex. App.--Beaumont 2004, no pet.) (citing Sims v. State, 117 S.W.3d 267, 270-77
(Tex. Crim. App. 2003) and Heberling v. State, 834 S.W.2d 350, 354 (Tex. Crim. App.
1992)). A constructive transfer requires that the transferor is at least aware of the existence
of the ultimate transferee before delivery. Daniels v. State, 754 S.W.2d 214, 221 (Tex. Crim.
App. 1988); Gonzalez v. State, 588 S.W.2d 574, 577 (Tex. Crim. App. 1979). The transferor
need not know the identity of or be acquainted with the ultimate recipient. Daniels, 754
S.W.2d at 221. However, when the State alleges a recipient who was not the immediate
recipient of the contraband, "the accused must have contemplated that his initial transfer
would not be the final transaction in the chain of distribution." Id.; see also Sims, 117
S.W.3d at 276-77.

 In this case, there is ample evidence of an actual transfer from Hubbard to McCain. 
There is also ample evidence of an actual transfer from McCain to Sheriff Walker. However,
Hubbard was indicted for a constructive transfer to Sheriff Joe Walker, not an actual transfer
to McCain. Therefore, the State had to prove that Hubbard contemplated that his transfer to
McCain was not the final transaction in the chain of distribution. See Daniels, 754 S.W.2d
at 221; see also Gonzalez, 588 S.W.2d at 577 (Where actual transfers existed between
appellant and intermediary and between intermediary and ultimate recipient, Court of
Criminal Appeals declined to find a constructive transfer from appellant to the ultimate
recipient because the record contained no evidence that appellant knew the intermediary was
acting on behalf of a third person.). Although we are not convinced that this requirement
provides any legitimate protection of an accused's constitutional rights, it is neither our duty
nor our right to modify or remove it. The record contains no such evidence. Viewing the
evidence in a light most favorable to the prosecution, we conclude that a rational jury could
not have found the elements of the offense beyond a reasonable doubt. See Swearingen, 101
S.W.3d at 95. We sustain issue two. We need not reach issue one, since it would result in
no greater relief. We reverse the judgment of the trial court and render judgment that
Hubbard is acquitted.

 REVERSED AND RENDERED.


 

 STEVE MCKEITHEN

 Chief Justice


Submitted on September 5, 2006

Opinion Delivered October 25, 2006

Do Not Publish


Before McKeithen, C.J., Gaultney and Kreger, JJ. 



DISSENTING OPINION


 I respectfully dissent. Generally, establishing a constructive transfer through an
intermediary requires proof the defendant must have contemplated there would in fact be a
third-party transferee beyond the intermediary. See Sims v. State, 117 S.W.3d 267, 277 (Tex.
Crim. App. 2003). That makes sense unless the "intermediary" is considered by law as the
equivalent of the ultimate transferee. Not every "constructive" delivery need involve an
"intermediary." See id. The general rule should not be applied, in my view, when the
transfer is to the buyer's agent authorized to take delivery. 

 The law treats the transfer to an authorized agent of the buyer as the equivalent of a
transfer to the principal. There is no true "third-party" or "intermediary" under those
circumstances. Proof of the agency and of actual delivery to the authorized agent is
sufficient. The record here includes sufficient evidence the informant acted as an authorized
agent for the sheriff in making the purchase. 

 Both Daniels and Gonzales were decided before Heberling v. State, 834 S.W.2d 350
(Tex. Crim. App. 1992). See Daniels v. State, 754 S.W.2d 214 (Tex. Crim. App. 1988);
Gonzalez v. State, 588 S.W.2d 574 (Tex. Crim. App. 1979). The Court in Heberling made
it clear that proof of an actual transfer to an agent is legally sufficient to convict the
defendant of delivery by actual transfer to an undercover officer. Heberling, 834 S.W.2d at
354. The Court noted that construing the term "actual transfer" to encompass both the
transferee and his agents was consistent with the general meaning of the term in the civil
context, and the Court cited authorities treating a delivery to a buyer's authorized agent as
"tantamount" to, or "equivalent" to, delivery to the actual buyer. Id. at 354 n.5. The delivery
constituted an actual transfer because of the agency relationship, despite the lack of an
instruction to the jury on the law of agency. 

 In Heberling, the Court described the evidence in part as follows:


 We must now decide whether the evidence at appellant's trial was sufficient
to establish an agency relationship between Nagid and Wilson. Although there
was no jury instruction on agency, there was substantial evidence presented at
trial from which the jury could have concluded that Nagid was an agent of
Wilson or, at the least, that Nagid was identified with Wilson in law and
represented him. Foremost, the jury had before it the written agreement . . . in
which Nagid agreed to act under Wilson's direction. In addition, there was
testimony indicating that the various individuals involved in the cocaine deal
understood that Nagid was acting on Wilson's behalf in obtaining the cocaine.


Id. at 354-55 (emphasis added). This evidence in that case was sufficient to support a
conviction by actual transfer to the undercover officer through his agent. 

 In Young v. State, 183 S.W.3d 699, 702 (Tex. App.--Tyler 2005, pet ref.), a law
enforcement officer made a purchase through a confidential informant, as in this case. The
seller was indicted for delivery of the drug by actual transfer to the officer. Id. at 706. The
appellate court held it was unnecessary for the State to allege the drug was in fact delivered
to the confidential informant as an agent for the officer. Id. 

 The indictment here, unlike the indictment in Young, alleged a constructive transfer
to the sheriff. "Constructive transfer" is a term that encompasses acts which, by construction
of law, are considered equivalent to a real delivery. 

 A transaction may involve both an actual delivery and a constructive delivery. See
Sims, 117 S.W.3d at 268. In the case before this Court, the proof in my view establishes
both. There is evidence of an "agency" relationship and a delivery to the authorized agent,
McCain. There is, of course, no evidence Hubbard knew of the confidential relationship
between McCain and the sheriff. Whether additional evidence may be required under
Heberling to establish an actual transfer in a particular case is not the issue here. The issue
is whether, by construction of law, this transfer was the legal equivalent of a transfer to the
sheriff. 

 Under the circumstances here, I believe the fact of agency serves to make the delivery
actual and constructive: actual in the sense that McCain is the sheriff's "agent," and delivery
to McCain is, under Heberling, considered delivery to the sheriff; constructive in the sense
that the contraband was not really transferred directly from Hubbard to the sheriff personally. 
Under this agency construct, the seller's knowledge of an intended transferee beyond
McCain would seem an unnecessary requirement, and the transfer is at its most basic level
a constructive one made equivalent by law to a direct transfer. If the purpose of including
the method of delivery in the indictment is to give the defendant adequate notice, and yet an
allegation of agency is not a requirement for the indictment, I believe the allegation of
constructive transfer more accurately notified the defendant of what he was charged with
doing.

 I do not believe that proof of the seller's knowledge of the existence of the ultimate
transferee should be required to establish a constructive transfer to a law enforcement officer
through an authorized agent. The law should treat the delivery to the officer through the
confidential informant as the equivalent of a direct delivery to the officer; that is, the law
should treat the transfer as a constructive as well as an actual transfer to the officer.


 _________________________________

 DAVID GAULTNEY

 Justice 

Dissenting Opinion

Delivered October 25, 2006