In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00057-CV


______________________________




MARTHA L. FERGUSON, Appellant



V.



CONNECT NGL PIPELINE, LLC, Appellee




 


On Appeal from the County Court at Law


 Panola County, Texas


Trial Court No. 2007-516




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 Martha L. Ferguson has filed an appeal from an agreed final judgment. The first question
this Court must answer, before proceeding further, is whether we have jurisdiction over the appeal. 
We have no jurisdiction.

 The judgment was signed March 4, 2009, making the notice of appeal due April 3, 2009,
unless a timely motion for new trial, motion to modify the judgment, or motion to reinstate were
filed, or findings of fact and conclusions of law were requested. See Tex. R. App. P. 26.1. None
of those events have happened, yet Ferguson filed her notice of appeal May 27, 2009.

 The information provided to this Court shows no timely motion for reconsideration or motion
for new trial was filed in this case. We have contacted the district clerk's office and have been
informed that no document has been filed to extend the appellate timetable. In the absence of
anything to extend the time for filing, Ferguson's notice of appeal was not timely filed and did not
invoke the jurisdiction of this Court. See Tex. R. App. P. 26.1.

 We provided the parties with an opportunity to explain to this Court how we have jurisdiction
over the appeal. We have received a response from both parties, but neither has provided such
information. See Tex. R. App. P. 42.3. We grant Appellee's motion to dismiss for want of
jurisdiction and deny as moot its estoppel-based motion to dismiss.



 We dismiss the appeal for want of jurisdiction.


 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 14, 2009

Date Decided: July 15, 2009



 Times New Roman"> Stephens challenges the legal sufficiency of the evidence to support his conviction for
"constructive delivery" of cocaine to Odom. In a legal sufficiency review, we examine the evidence
adduced in the trial below in the light most favorable to the jury's verdict and ask whether any
rational trier of fact could have found all the elements of the offense beyond a reasonable doubt. 
Jackson v. Virginia, 443 U.S. 307, 319 (1979). "[U]nder Malik v. State, evidentiary sufficiency
should be measured against the 'elements of the offense as defined by the hypothetically correct jury
charge for the case . . . .'" Fuller v. State, 73 S.W.3d 250, 252 (Tex. Crim. App. 2002) (quoting
Gollihar v. State, 46 S.W.3d 243, 255-56 (Tex. Crim. App. 2001), and citing Malik v. State, 953
S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge would be one that accurately sets out the
law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or
unnecessarily restrict the State's theories of liability, and adequately describes the particular offense
for which the defendant was tried." Malik, 953 S.W.2d at 240. "State law, in relevant part, defines
'element of the offense' as the forbidden conduct with the required culpability." Id. at 252-53.

 The Texas Court of Criminal Appeals has mandated that a complaint alleging insufficiency
of the evidence is to be analyzed under the hypothetically correct jury charge. Gharbi v. State, 131
S.W.3d 481, 483 (Tex. Crim. App. 2003) (allegation which is not statutory element or "an integral
part of an essential element of the offense" need not be included in hypothetically correct jury
charge); see Fuller v. State, 73 S.W.3d 250, 252 (Tex. Crim. App. 2002) (allegation which is not
statutory element need not be included in hypothetically correct jury charge); see also Gollihar, 46
S.W.3d at 256. The charged offense is the act of delivery of cocaine. "The hypothetically correct
charge may not modify the indictment allegations in such a way as to allege 'an offense different
from the offense alleged in the indictment.'" Gollihar, 46 S.W.3d at 255 n.20 (quoting Planter v.
State, 9 S.W.3d 156, 159 (Tex. Crim. App. 2000)). As a consequence, it cannot change this charge
of constructive delivery to a charge of actual delivery. 

 The grand jury's indictment alleged that Stephens 

 on or about the 5th day of October, 2006, and before presentment of this indictment
in the County of Panola and State of Texas, did then and there knowingly deliver by
constructive delivery to Brady Odom, a controlled substance, namely, cocaine, in an
amount of four grams or more but less than 200 grams, 


 AGAINST THE PEACE AND DIGNITY OF THE STATE. 


 A person commits a crime in Texas if he "knowingly manufactures, delivers, or possesses
with intent to deliver a controlled substance listed in Penalty Group 1." Tex. Health & Safety
Code Ann. § 481.112 (Vernon 2003); see also Talley v. State, 909 S.W.2d 233, 234 (Tex.
App.--Texarkana 1995, pet. ref'd). Cocaine is a penalty group 1 narcotic. Tex. Health & Safety
Code Ann. § 481.102(3)(D) (Vernon Supp. 2008). The phrase "to deliver," as it is used in Article
481.112, means "to transfer, actually or constructively, to another a controlled substance, counterfeit
substance, or drug paraphernalia, regardless of whether there is an agency relationship." Tex.
Health & Safety Code Ann. § 481.002(8) (Vernon Supp. 2008). (1) "An indictment for the delivery
of a controlled substance must specify which type or types of delivery was . . . performed." Young
v. State, 183 S.W.3d 699, 706 (Tex. App.--Tyler 2005, no pet.); see also Warren, 15 S.W.3d at 170;
Marable v. State, 990 S.W.2d 421, 423 (Tex. App.--Texarkana 1999), aff'd, 85 S.W.3d 287 (Tex.
Crim. App. 2002). At trial, the State is required to prove delivery via the method that is alleged in
the indictment. Conaway, 738 S.W.2d at 694 ("[N]otwithstanding that the State could have alleged
both actual and constructive delivery, . . . it chose only to allege that the delivery occurred by 'actual
delivery.' It was thus bound to prove its allegation beyond a reasonable doubt.") (citations omitted);
Warren, 15 S.W.3d at 170. The indictment may allege multiple theories of delivery. Conaway, 738
S.W.2d at 694; Warren, 15 S.W.3d at 170.

 "[A]n actual transfer or delivery, as commonly understood, contemplates the manual transfer
of property from the transferor to the transferee or to the transferee's agents or to someone identified
in law with the transferee." Heberling v. State, 834 S.W.2d 350, 354 (Tex. Crim. App. 1992). "If
the State proceeds under the theory that an intermediary was an undercover officer-buyer's agent or
representative, then a defendant could be convicted of an actual delivery under the rule articulated
in Heberling." Marable, 85 S.W.3d at 291 (Cochran, J., concurring); see Heberling, 834 S.W.2d
at 354.

 A "constructive transfer" requires "the transfer of a controlled substance either belonging to
an individual or under his control by some other person or agency at the instance or direction of the
individual accused of such constructive transfer." Daniels v. State, 754 S.W.2d 214, 220 (Tex. Crim.
App. 1988); see also Marable, 85 S.W.3d at 291. A constructive transfer may also occur when the
delivery is made by implication. See Payan v. State, 199 S.W.3d 380, 384 (Tex. App.--Houston [1st
Dist.] 2006, pet. ref'd), cert. denied, __ U.S. __, 127 S.Ct. 1129, 166 L.Ed.2d 898 (2007). 

 Some appellate jurists have written that a constructive transfer requires the transferor to have
actual knowledge of the ultimate transferee. See, e.g., Daniels, 754 S.W.2d at 221-22; Sheffield v.
State, 623 S.W.2d 403, 405 (Tex. Crim. App. [Panel Op.] 1981); Hart v. State, 15 S.W.3d 117, 119
(Tex. App.--Texarkana 2000, pet. ref'd) (essential elements of constructive transfer are "transferor
had either direct or indirect control of the substance transferred" and "knew of the existence of the
transferee"); Wyatt v. State, 951 S.W.2d 144, 148 (Tex. App.--Houston [14th Dist.] 1997, pet. ref'd). 

 Others, including the more recent and binding rulings, do not require proof of knowledge of
the identity of an intended third-party transferee. In Sims v. State, the Texas Court of Criminal
Appeals made a thoughtful and considered analysis of some of the various meanings of "constructive
delivery" as employed in Texas. 117 S.W.3d 267 (Tex. Crim. App. 2003). The court even quoted
Daniels for the proposition that the State must show "[t]he transferor . . . kn[e]w of the existence of
the transferee." Id. at 277 (quoting Daniels, 754 S.W.2d at 221-22). But the court thereafter wrote,
"When the transferee alleged is not the immediate transferee, then for the evidence to be sufficient,
the defendant must have contemplated that there would in fact be a third party transferee." Id. 

 "[W]hen the State alleges constructive transfer to an alleged ultimate recipient . . . the
accused must have contemplated that his initial transfer would not be the final transaction in the
chain of distribution." Daniels, 754 S.W.2d at 221; see also Marable, 85 S.W.3d at 291 ("A
conviction for delivery of a controlled substance by constructive transfer requires some showing that
a defendant-transferor was 'at least aware of the existence of an ultimate transferee before he may
be said to have delivered or made a delivery of a controlled substance to another through a third
party.'").

 A classic constructive delivery case is Gutierrez v. State, 71 S.W.3d 372, 376-77 (Tex.
App.--Amarillo 2001, pet. ref'd), wherein the defendant presumably never laid eyes on or
communicated directly with the undercover drug officer. In Gutierrez, the officer drove his car to
a place in front of the defendant's residence. Someone other than the defendant came to the car,
communicated with the officer, returned to the residence, and came out with drug samples which he
showed the undercover officer. The officer then paid the other individual over $11,000.00; the other
individual returned to the residence and brought a substantial quantity of drugs to the undercover
officer, still seated in the automobile. When delivery occurred, a raid was conducted inside the
residence, where the defendant was found hunched over a commode having drug residue in it. Id. 
Though there was no proof that the defendant knew the identity of the officer seated in the
automobile, the appeals court held that the evidence was sufficient to establish constructive delivery. 
See id. at 377. (2)

 With these thoughts in mind, we now turn to our application of the hypothetically correct jury
charge to the evidence presented in the case now on appeal. By incorporating the statutory definition
of "deliver" into the primary statute at issue in this case, we conclude the hypothetically correct jury
charge, as authorized by the indictment in this case, required the State to present proof of the
following elements: (1) that Stephens, (2) knowingly, (3) constructively delivered, (4) with intent
to deliver, (5) cocaine, (6) to some third-party transferee beyond Robert Lewis. Absent proof of each
of these elements, we cannot conclude the evidence is legally sufficient to prove constructive
delivery in this case.

 The evidence at trial, when viewed in the light most favorable to the jury's verdict, showed
Stephens sold six or seven rocks of cocaine aggregating about ten grams to a confidential informant,
Lewis, on October 5, 2006, for $275.00. David Allen Gray, a deputy with the Panola County
Sheriff's Office, told the jury that this amount was what he normally saw distributed to mid-level
dealers and was worth about $1,000.00 if sold on the street in subsequent smaller sales. Gray opined
that the $275.00 paid by Lewis to Stephens for the ten grams of cocaine was too low to have been
considered an amount a typical end user would pay. However, when asked on cross-examination
whether ten grams could, in fact, be a "personal use" amount, Gray only answered, "Ten grams is
a pretty good amount." And Lewis himself later testified that he had previously purchased six rocks
of crack cocaine during a previous sting operation, paying only $100.00 for the drugs on that
occasion. 

 There was no testimony that Lewis brought his own scales to the drug transaction; instead,
he and Stephens used Stephens's scales to weigh the drugs. This fact may be significant because it
suggests Lewis would appear to Stephens to be an end user who trusted his own dealer rather than
a mid-level dealer concerned about receiving an adequate amount for later resale. Additionally,
Lewis never testified that he had, in any way or manner, suggested to Stephens--either before or
during the drug sale--that Lewis intended to later deliver or resell this cocaine to Odom or anyone
else. 

 Moreover, the State presented no evidence from any other source that Stephens believed
Lewis would thereafter specifically transfer the cocaine to Odom or another, that Stephens had
directed Lewis to transfer the cocaine specifically to Odom or another, or that Stephens intended for
Lewis to transfer the narcotics specifically to Odom or another. (3) Nor did the State present any
evidence Stephens knew or should have reasoned that Lewis was an intermediary for Odom or
another. Cf. Heberling, 834 S.W.2d at 354. For example, evidence suggesting Stephens had
previously initiated contact with Odom for the latter to purchase drugs would support an inference
that Stephens knew or should have believed Lewis might be more than a mere end user, assuming
Stephens had also been made aware of a connection between Lewis and Odom. Cf. Hubbard v.
State, 896 S.W.2d 359, 362 (Tex. App.--Houston [1st Dist.] 1995, no pet.). Or if the evidence had
shown a greatly more significant quantity of drugs, then such evidence might support an inference
that Stephens knew or should have suspected Lewis was more than a mere end user; but we cannot
say that five, six, or seven rocks of cocaine (as opposed to more than a kilogram of cocaine) provides
a legally sufficient basis to make such an assumption. Contrast Barrera v. State, No. 14-97-00044-CR, 1999 Tex. App. LEXIS 3237, at *3-6 (Tex. App.--Houston [14th Dist.] Apr. 29, 1999, pet.
ref'd) (not designated for publication).

 Such is true in this case because the State presented no evidence to suggest that Stephens
could have assumed Lewis would thereafter deliver, sell, transfer, or convey any or all of the cocaine
to another party. To do so, the jury must stack its inferences atop one another. Instead, the evidence
in this case supports only the conclusion that Stephens reasonably believed Lewis was purchasing
the cocaine for his own personal use. The State presented no direct or circumstantial evidence that
is legally sufficient to support a different conclusion with respect to this particular element of the
indicted offense.

 Absent specific evidence to support the conclusion Stephens knew that a subsequent delivery
would be made specifically by the confidential informant to Odom or another, the State's evidence
in this case is legally insufficient to prove Stephens constructively transferred cocaine.

 The State suggests in its brief that the jury was free to infer from the evidence that Stephens
knew Lewis would later transfer the cocaine to one or more persons. The State presented evidence
that ten grams of cocaine was a quantity greater than that normally purchased for personal use; the
State also presented evidence that Lewis paid less than the typical amount one would expect to pay
for that great a quantity of cocaine. This evidence, argues the State, showed Stephens knew or
should have known Lewis would not be the final recipient of the narcotics at issue. We find no
precedent requiring that result, and we conclude that the evidence wholly fails to show any intent or
knowledge by Stephens that there would be some final recipient other than Lewis.

 While the State's evidence showed Stephens actually delivered cocaine to Lewis, the
evidence did not go further to prove Stephens had any actual knowledge or intent that these same
narcotics would be ultimately transferred to Odom or any third party. Accordingly, because the State
did not meet its burden of proof (as set forth by the hypothetically correct jury charge applicable in
this case) to show a knowing constructive delivery, we have no choice but to conclude the evidence
is legally insufficient.

II. Conclusion

 The State's evidence overwhelmingly showed Stephens was a crack dealer. But,
unfortunately, the State's evidence did not prove all the essential elements of the specific offense
with which Stephens was charged: constructive delivery (as opposed to an actual delivery to Lewis).

 Accordingly, we have no choice but to reverse the trial court's judgment and render a
judgment of acquittal. Stephens's remaining issues are moot.



 Bailey C. Moseley

 Justice


Date Submitted: July 23, 2008

Date Decided: October 16, 2008


Publish
1. Delivery may also be accomplished by an offer to sell. Conaway v. State, 738 S.W.2d 692,
694 (Tex. Crim. App. 1987); Warren, 15 S.W.3d at 170 (citing Ferguson v. State, 622 S.W.2d 846,
848 (Tex. Crim. App. [Panel Op.] 1980)).
2. One unreported case, addressing a conviction for constructive delivery, involved evidence
the transferor defendant did not know of the existence of an ultimate recipient or had directed the
intermediary to deliver the substance to that specific (ultimate) transferee. Terrell v. State, Nos. 01-99-00901-CR & 01-99-00902-CR, 2000 Tex. App. LEXIS 3475, at *5-7 (Tex. App.--Houston [1st
Dist.] May 25, 2000, no pet.) (not designated for publication) ("There is no evidence that appellant
knew about Collingsworth's role in the sale because, not only were Collingsworth and the other
officers not present during the drug transaction, but also, they were too far removed from the scene
to hear any conversation between appellant and Smith."). The Terrell court also noted that the
evidence would have been sufficient to support the appellant's conviction for an actual delivery of
cocaine to the intermediary between appellant and the narcotics officers, but the State had not made
such an allegation in the indictment underlying Terrell's conviction. Id. at *7.
3. The State points out that Stephens testified that he believed Lewis was a drug dealer and that
he had seen Lewis "cooking" crack.