

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-08-00143-CR

_____

DELEON JUAN VANEGAS, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court #1
Dallas County, Texas
Trial Court No. F-0800368-H

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

The lifeless body of fifteen-year-old Fernando Cortez, Jr., was found by his sixteen-year-old sister, Ava Bianca Cortez, at the Dallas[1] home of Bianca's nineteen-year-old boyfriend, Deleon Juan Vanegas, Jr., the morning after a long night during which the three had ingested Xanax and "cheese"—a dangerous mixture of black tar heroin and Tylenol P.M.—while they had watched rented movies and had eaten Chinese food. Bianca found Fernando's body lying face up with a white froth around the mouth and nose. It was determined that Fernando died from a heroin overdose.

Vanegas was convicted by a jury of knowing delivery of heroin to a minor. The jury also found Vanegas used or exhibited the heroin as a deadly weapon in commission of the crime. From a sentence of eighteen years' imprisonment, Vanegas appeals.

We reform the trial court's judgment to reflect the correct statutory section and degree for the offense and, as reformed, affirm the judgment. We reach that result based on the following holdings: (1) Vanegas was properly arraigned, (2) sufficient evidence supports the judgment, (3) ineffective assistance of counsel has not been shown, and (4) the judgment should be reformed to speak the truth.

---

[1]This case was transferred to this Court from the Fifth District Court of Appeals in Dallas as part of the Texas Supreme Court's docket equalization program. We are not aware of any conflict between the precedent of the Dallas Court and the precedent of this Court on any issue relevant in this appeal. *See* TEX. R. APP. P. 41.3.

*(1)     Vanegas Was Properly Arraigned*

"In all felony cases, after indictment, . . . there shall be an arraignment." TEX. CODE CRIM. PROC. ANN. art. 26.01 (Vernon 2009). The purpose of the arraignment is to identify the defendant and hear his or her plea. TEX. CODE CRIM. PROC. ANN. art. 26.02 (Vernon 2009). Although Vanegas claims he did not enter a plea at arraignment, the record before us establishes otherwise. Vanegas was first arraigned April 4, 2008, when he pled "not guilty" to all allegations contained within the indictment. His brief fails to refer to this arraignment. Instead, Vanegas refers to an arraignment on the same indictment which occurred May 12, 2008, the day before trial. The record reflects that the trial court read the indictment, advised Vanegas of the range of punishment, and recorded a plea offer from the State. After receiving responses from counsel that no other pretrial matters needed to be taken up, the trial court proceeded to voir dire. Vanegas contends that, because the reporter's record does not reflect he was given the opportunity to plead at the May 12 arraignment, he was harmed because the failure "deprived him of the opportunity to change his mind and accept the State's offer before going to trial."[2] After the jury was empaneled and seated, however, the trial court read the indictment and asked for Vanegas' plea. Again, he pled "not guilty."[3]

---

[2]The clerk's record contains a document bearing Vanegas' signature file-marked May 12, 2008, at 8:59 a.m. which recites, "Comes now Defendant in the above cause, at the time of entering a plea of Not Guilty herein in open Court, and requests that the JURY assess the punishment herein."

[3]Vanegas cites cases decided under Article 36.01 of the Texas Code of Criminal Procedure, which requires the indictment to be read and a plea entered in the jury's presence. TEX. CODE CRIM. PROC. ANN. art. 36.01 (Vernon 2007); *see Hunt v. State*, 994 S.W.2d 206, 210–11 (Tex. App.—Texarkana 1999, pet. ref'd); *Hazelwood v. State*, 838 S.W.2d 647, 650–51 (Tex.

3

This point of error is overruled, since Vanegas was properly arraigned April 4, 2008. Moreover, even had there been any error in the arraignment, it would have been waived since no objection was asserted below. *Adkison v. State*, 762 S.W.2d 255, 259 (Tex. App.—Beaumont 1998, pet. ref'd).

*(2)     Sufficient Evidence Supports the Judgment*

Vanegas contends the evidence is legally and factually insufficient to support the verdict—principally in proving the element of delivery of the controlled substance.

When conducting a legal sufficiency analysis, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Clewis v. State*, 922 S.W.2d 126, 132–33 (Tex. Crim. App. 1996). This standard serves as a tool to determine whether there is a fact issue at all. *Clewis*, 922 S.W.2d at 133. In other words, if the evidence is insufficient under the *Jackson* standard, we must render a judgment of acquittal. *Id.*

If the *Jackson* standard is met, we may not sit as the thirteenth juror reevaluating the weight and credibility of the evidence. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, we must give proper deference to the fact-finder's responsibility to weigh the evidence, resolve conflicts in the testimony, and draw reasonable inferences from basic facts. *Johnson v. State*,

App.—Corpus Christi 1992, no pet.); *State ex rel. Ownby v. Harkins*, 705 S.W.2d 788, 790 (Tex. App.—Dallas 1986, orig. proceeding). Since Article 36.01 was complied with, Vanegas' cited cases do not apply.

23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Clewis*, 922 S.W.2d at 133; *Bottenfield v. State*, 77 S.W.3d 349, 354 (Tex. App.—Fort Worth 2002, pet. ref'd) (citing *Jackson*, 443 U.S. at 319).

When reviewing for factual sufficiency, we are not free to reweigh the evidence and set aside a jury verdict merely because we feel a different result is more reasonable. *Clewis*, 922 S.W.2d at 135. Instead, we give due deference to the jury's determinations and will find the evidence factually insufficient only when necessary to prevent manifest injustice. *Johnson*, 23 S.W.3d at 8–9, 12; *Clewis*, 922 S.W.2d at 133, 135. Thus, a factual sufficiency review examines the evidence in a neutral light and determines whether the proof of guilt is obviously weak as to undermine confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be clearly wrong and unjust. *Johnson*, 23 S.W.3d at 11; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); *Harris v. State*, 133 S.W.3d 760, 764 (Tex. App.—Texarkana 2004, pet. ref'd).

A "person commits an offense if the person knowingly delivers a controlled substance . . . to a . . . child." TEX. HEALTH & SAFETY CODE ANN. § 481.122 (Vernon 2003). Vanegas contends he did not knowingly deliver the "cheese" to Fernando. To bolster his argument, he reiterates that he did not force or coax Fernando into "snorting cheese," but instead merely left it on the plate for his own use.

According to the Texas Controlled Substances Act, to deliver "means to transfer, actually or constructively, to another a controlled substance . . . regardless of whether there is an agency relationship." TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (Vernon Supp. 2008). Actual

5

delivery consists of transferring or surrendering "the real possession and control of a controlled substance from one person to another person." *Heberling v. State*, 834 S.W.2d 350, 354 (Tex. Crim. App. 1992); *see Ex parte Perales*, 215 S.W.3d 418, 420 (Tex. Crim. App. 2007). A constructive transfer can occur by placing the contraband "in a particular location and then advis[ing] the recipient of this location so that the recipient can retrieve" it. *Sims v. State*, 117 S.W.3d 267, 268–69 (Tex. Crim. App. 2003). A single case may involve both actual and constructive transfer. *Id.* at 270. For example, a constructive transfer can occur when someone is informed of the contraband's location, and an actual transfer can occur when the contraband is retrieved. *Id*.

After Bianca found Fernando's body and before police arrived, Vanegas fled the scene. Vanegas' subsequent voluntary interview by Detective Paul Ellzey, combined with Bianca's testimony at trial, revealed the events leading up to Fernando's death. Earlier on the night of Fernando's death, Vanegas had picked up Bianca and his sister, Monique. He drove to a dealer's home to purchase black tar heroin, picked up Fernando who "was already messed up," and returned to Monique's home. Monique cut the heroin with Tylenol P.M. to make "cheese." Monique "snorted" some lines with Vanegas and gave him some "cheese" to take with him.

After leaving Monique's home, Vanegas, Bianca, and Fernando rented some movies, picked up Chinese food, and went to a "dope" house to acquire Xanax and more heroin. Vanegas took two Xanax pills, while Bianca and Fernando took one and one-half each. When they arrived at Vanegas' house, they watched movies, ate the Chinese food, and proceeded to "[snort] some cheese." Bianca

6

and Fernando had never tried "cheese" before, so Vanegas went first and allowed Fernando to use his straw so that he could "snort cheese." In his interview, Vanegas said he saw Fernando "snort" two "lines." Bianca also admitted she "snorted" one "line of cheese." In the course of the night, Vanegas admitted he "snorted" between three and five "lines of cheese." He had intended to cut the newly purchased heroin, acquired after he left Monique's house, but claims that he passed out.[4] Bianca and Fernando continued to watch movies until Fernando became tired. Since Fernando had never stayed at Vanegas' house, Bianca showed him where he would be sleeping. Fernando was found dead in the same position that Bianca last saw him the night before. His autopsy concluded that he had "died as a result of the toxic effects of heroin."

Here, the evidence suggests that Vanegas organized the "cheese" into lines in the presence of Fernando, and "snorted" a few lines with the aid of a straw. He passed the straw to Fernando and watched as he "snorted" two lines of "cheese." Both actual and constructive delivery was involved in this case, since Vanegas surrendered possession of the "cheese" while in the presence of Fernando, who retrieved it. Based on Vanegas' own admissions, we conclude that a rational trier of fact could find that, beyond a reasonable doubt, Vanegas knowingly delivered the "cheese" to Fernando. We give due deference to the jury's determination of this matter and fail to find, even when viewing the evidence in a neutral light, that confidence in the jury's verdict is undermined or shown to be clearly wrong and unjust. *See Rodriguez v. State*, 31 S.W.3d 772, 774 (Tex. App.—Austin 2000), *aff'd*, 104

---

[4]Contrary to Ellzey's testimony that "[Vanegas] is the one that cut it," it appears from Vanegas' interview and Bianca's testimony that the heroin was actually cut by Monique.

S.W.3d 87 (Tex. Crim. App. 2003) (in face of argument that State did not prove actual transfer of cocaine, evidence legally sufficient where defendant chopped cocaine with razor blade, divided it into lines, and watched as his fourteen-year-old daughter used rolled-up dollar bill to inhale cocaine). The evidence is legally and factually sufficient to support the verdict that Vanegas knowingly delivered "cheese" heroin to a child.

*(3)    Ineffective Assistance of Counsel Has Not Been Shown*

Vanegas also contends he received ineffective assistance of counsel when counsel allowed inadmissible extraneous-offense evidence to be placed in front of the jury.[5] The extraneous-offense evidence refers to a no-billed manslaughter charge mentioned in the videotape interview of Vanegas with Ellzey as follows:

> THE DETECTIVE:    What did they do with that other case?
>
> THE WITNESS:      What other case?
>
> THE DETECTIVE:    That terrible case.
>
> THE WITNESS:      My little boy?
>
> THE DETECTIVE:    The manslaughter case.
>
> THE WITNESS:      Oh, my little boy?  They took to it [sic] the grand jury and they dumped it.
>
> THE DETECTIVE:    They no billed it or what?

---

[5]An extraneous offense is defined as any "act of misconduct . . . that is *not shown in the charging papers*." *Coffel v. State*, 242 S.W.3d 907, 909 (Tex. App.—Texarkana 2007, no pet.) (quoting *Rankin v. State*, 953 S.W.2d 740, 741 (Tex. Crim. App. 1996)).

8

THE WITNESS:    Yeah, I guess.

THE DETECTIVE:    Because I heard they was trying to give you some years at first.

THE WITNESS:    Yeah, at first, they was trying to give me some years, but (unintelligible) on the case.

. . . .

THE DETECTIVE:    But you don't -- tell me what was -- I haven't had time to go research your case, but did you ever get arrested for that case and did you ever have to post a bond for that case?

THE WITNESS:    No, none of that.

The State provided the jury with a transcript of the videotaped interview and played portions of the interview. Both the videotape and transcript were offered and admitted for demonstrative purposes only. Before the State played the portion referenced above, Vanegas' counsel asked to approach the bench, the jury was removed, and counsel lodged Vanegas' objection:

> Your Honor, I believe at this point in the videotape we're going to get into asking him about a prior manslaughter case that was no-billed by the Grand Jury, and I would argue that the prejudicial effect of the prior case isn't relevant to the case at hand at this point. It's not relevant and it would be too prejudicial to talk about just the manslaughter case and how that applies to what we're trying him for.

Counsel also asked that page thirty-three of the transcript, containing the references, be removed from the jury's possession. The State agreed to start the video after the point containing the extraneous-offense evidence and also agreed to remove page thirty-three from the transcript. Before the jury was brought in, a recess was taken. When the jury was seated, the State drew its attention

9

to page thirty-four of the transcript and did not play the portion referencing manslaughter.  Vanegas contends his counsel was ineffective because he forgot to ensure page thirty-three was actually removed from the transcript copies in the jury's possession.

Whether a defendant received ineffective assistance of counsel is an assessment that must be made according to the facts of each case.  *Ex parte Scott*, 581 S.W.2d 181, 182 (Tex. Crim. App. [Panel Op.] 1979).  Any allegation of ineffectiveness must be firmly established in the record. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).  Vanegas bears the burden of proving from the record, by a preponderance of the evidence, that counsel was ineffective.  *Goodspeed*, 187 S.W.3d at 392; *Thompson*, 9 S.W.3d at 813; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984).

To aid our determination, we apply the two-pronged *Strickland* test handed down by the United States Supreme Court.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  Vanegas must first show counsel's performance fell below an objective standard of reasonableness when considering prevailing professional norms.  *See id.* at 687–88.  "This requires showing that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment."  *Sanchez v. State*, No. 07-06-0435-CR, 2008 WL 2405889, at *1 (Tex. App.—Amarillo June 13, 2008, no pet.) (mem. op., not designated for publication).  Our review of counsel's performance is highly deferential.  *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).  There is a strong presumption

that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *White*, 160 S.W.3d at 51; *Tong*, 25 S.W.3d at 712. Therefore, we will not second guess the strategy of counsel at trial through hindsight. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd). Where the record is silent as to why counsel failed to make an objection or take certain actions, we will assume it was due to any strategic motivation that can be imagined, and the appellant will have failed to rebut the presumption that trial counsel's actions were in some way reasonable. *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *Garcia v. State*, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001); *Fox v. State*, 175 S.W.3d 475, 485–86 (Tex. App.—Texarkana 2005, pet. ref'd). In other words, we will not conclude that the challenged conduct was deficient unless it was so outrageous that no competent attorney would have engaged in it. *Thompson*, 9 S.W.3d at 808; *Fox*, 175 S.W.3d at 485–86.

The record demonstrates counsel objected as soon as he realized extraneous-offense evidence would be introduced and requested removal of all materials containing such evidence. Although counsel failed to see to it that page thirty-three of the transcript was actually removed, the record fails to demonstrate why. We note that a recess was taken before the jury was seated. Counsel could have communicated with the State and determined it would be best for the State to draw attention to a subsequent page in the transcript, rather than have the jury notice the absence of a page in the

11

transcript and conclude there was evidence Vanegas was hiding. We will not second guess counsel through hindsight.

In any event, failure to satisfy either prong of the *Strickland* test is fatal. *Jaubert v. State*, 74 S.W.3d 1, 9 (Tex. Crim. App. 2002). Thus, we need not examine both *Strickland* prongs if one cannot be met. *Strickland*, 466 U.S. at 697. We find this fourth point of error can be overruled based on analysis of the second prong of *Strickland*. To meet the second prong, Vanegas must show that counsel's performance damaged his defense such that there is a reasonable probability the result of the trial would have been different. *See id.* at 693; *Tong*, 25 S.W.3d at 712. It is not enough for Vanegas to show that the errors had some conceivable effect on the outcome of the proceeding. *See Strickland*, 466 U.S. at 693. We evaluate this factor while taking into consideration the totality of representation and the particular circumstances of this case. *Thompson*, 9 S.W.3d at 813; *Ex parte Felton*, 815 S.W.2d 733, 735 (Tex. Crim. App. 1991).

There is no evidence in the record demonstrating the jury saw or considered page thirty-three of the transcript. It appears that counsel was playing the video while the jury had the transcript in its possession; the jury could either watch the videotape, or follow along using the transcript. Since the transcript was offered for demonstrative purposes only, it was not available during jury deliberations, such that the jury could be influenced by it. The trial court instructed the jury that:

> if there is any testimony before you in this case regarding the defendant's having committed an offense, if any, other than the offense, if any, alleged against him in the indictment in this case, you cannot consider that testimony for any purpose unless

> you find and believe beyond a reasonable doubt that the defendant committed such other offense.

This Court can generally presume that the jury followed the trial court's instructions. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). Also, because we have concluded the evidence was legally and factually sufficient to support the verdict, Vanegas has failed to demonstrate that removal of any alleged deficiency would have caused a different result. Since Vanegas has not met both prongs of the *Strickland* test, this point of error is overruled.

*(4) The Judgment Should Be Reformed to Speak the Truth*

The judgment in this case lists the statute of the offense as "19.02 Health and Safety Code," even though no such statute exists. The parties agree that the judgment should be reformed to reference Section 481.122 of the Texas Health and Safety Code as the statute addressing the correct offense for which Vanegas was indicted and convicted. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.122.

Additionally, the judgment of conviction lists the degree of the offense as a second-degree felony. While it is true that delivery of a controlled substance to a minor is a second-degree felony, the degree of offense is increased by one level if a jury determines beyond a reasonable doubt that the minor died as a result of introducing the controlled substance into the body. TEX. HEALTH & SAFETY CODE ANN. §§ 481.122(c), 481.141(a) (Vernon Supp. 2008).

The Texas Rules of Appellate Procedure give this Court authority to reform judgments and correct typographical errors to make the record speak the truth. TEX. R. APP. P. 43.2; *French v.*

13

*State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Peek v. State*, No. 06-08-00069-CR, 2008 WL 5090344, at *1–2 (Tex. App.—Texarkana Dec. 4, 2008, no pet.) (mem. op., not designated for publication) (reforming judgment to reflect correct degree of offense); *Battle v. State*, No. 06-07-00148-CR, 2008 WL 482343, at *3 (Tex. App.—Texarkana Feb. 25, 2008, no pet.) (mem. op., not designated for publication) (reforming judgment to reflect proper statute under which defendant should have been convicted); *Gray v. State*, 628 S.W.2d 228, 233 (Tex. App.—Corpus Christi 1982, pet. ref'd).

We modify the judgment to reflect that Vanegas' conviction was under Section 481.122 of the Texas Health and Safety Code, and was of a first-degree felony offense.[6]

As reformed, we affirm the judgment of the trial court.

Josh R. Morriss, III
Chief Justice

Date Submitted:      March 23, 2009
Date Decided:       April 10, 2009

Do Not Publish

---

[6]We also note that the judgment provides that the sentence will run "concurrently." For this offense, enhanced due to death or serious bodily injury of the recipient of the controlled substance, a sentence cannot run concurrently. TEX. HEALTH & SAFETY CODE ANN. § 481.141(c) (Vernon Supp. 2008). But because this case involves only one charge, and thus one sentence, we need not address this error.